## E. J. BROOKS *v.* JNO. M. FLEMING.

1. CONTEMPT OF COURT. *When appeal lies.* An appeal lies from the judgment or decree of an inferior court convicting a party of contempt where the contempt was not in the presence of the court,—as, for instance, in disobeying the fiat of an injunction.

Case cited: Martin *ex parte*, 1 Yer., 457.

2. SAME. *No appeal on behalf of relator, when.* No appeal lies on behalf of the relator from the action of an inferior court discharging a motion to strike an attorney from the rolls, but where the motion has been granted the attorney may appeal.

### FROM KNOX.

Appeal from a decree of the Chancery Court at Knoxville, rendered April 6, 1872. Hon. O. P. TEMPLE presiding.

BAXTER for complainant.

No counsel marked for defendant.

TURNEY, J., delivered the opinion of the court.

The record contains two motions—one to attach Fleming for contempt, and the other to strike him from the roll of attorneys.

The cases originated in the Chancery Court for Knox county. The first motion is based upon the alleged fact that Fleming, in violation of the fiat of the Chancellor restraining him therefrom, collected two debts due to the law firm of Fleming & Brooks, the

latter having filed a bill to settle up and close the partnership. The Chancellor convicted Fleming of the contempt, and he has appealed to this court.

The first question to be considered is, is the appeal allowable? We think it is. A case very similar to this was before us lately at Jackson. James Gallagher was fined and ordered to be imprisoned for disobeying an injunction. In that case the right of appeal was recognized, and the judgment of the Chancellor reversed. Cases of this character are of so unfrequent occurrence in this State, there is but little authority touching them, but, upon principle, we think the right of appeal to the party charged is quite clear, when the contempt is not in the face of the court. That it will not lie in such case, is for the strong reasons instanced by Judge Calvin in the case of Andrew L. Martin *ex parte*, 1 Yer., 457, as well as for the additional one that the entire matter of contempt can never be presented to any court just as it occurred except to the one in whose presence it did occur, as, for example, the language of the party may be of itself abstractly unobjectionable, while the manner, the look, tone of voice, the gesture, may make a case of flagrant contempt. It is easy to imagine a case deserving punishment in which no word may have been spoken, nor any act done that can be transferred from mind to mind by means of a record. Not so, however, in cases in which the contempt consists in doing a forbidden act, or in omitting to do an act commanded. These are contempts not in the presence of the court, and can only

be brought to its knowledge and invoke its action upon the testimony of others. The charge must be made in such form as to give the party charged an opportunity to purge himself of the alleged contempt. Ordinarily, it must be made upon oath, to which the person accused by it has the right to answer. This answer presents an issue to be inquired of by the court, and to be determined upon its facts. The inquiry is in the nature of a criminal proceeding, under which the accused may be deprived of his pocket by fine, and of his liberty by imprisonment. Without the right of appeal, and upon a misconstruction of facts derived from others, an aggrieved party may be, and sometimes must be, without redress. The principles of the organic law of the State, as well as the long-established practice of the court, require a very liberal construction of the right of appeal to those whose liberties and property are in any manner endangered. It is by such right that petty tyranies can be kept down in republics.

Then we inquire, was Fleming guilty of the contempt charged?

Brooks, in his bill, charges: "On the first day of December, 1865, your orator and the said defendant, John M. Fleming, mutually made and entered into a written agreement and articles of partnership for the purpose of prosecuting their business as attorneys at law in Knox and other counties of Tennessee. Said agreement was in writing, executed by your orator and defendant. By the terms of said articles, your orator and said defendant were to conduct and

carry on, as partners, their said business as attorneys under the firm name and style of Fleming & Brooks, and were to share in the profits of said business as follows: The profits of cases which had at the date of said articles been commenced by said Fleming, as the profits of cases which should be undertaken and commenced by said firm within one year from the said date, were to be appropriated, two-thirds to the said Fleming and one-third to your orator." * * *

The bill, amongst other things prayed for, asks that Fleming be enjoined from collecting debts due the firm, and was filed February 19, 1868.

Fleming answered April 11, 1868, and as to the terms of the partnership, says: "The contents of said paper respondent does not distinctly remember, but he believes they are *substantially* stated in the bill." He again says: "The charge that respondent took the article of agreement aforesaid—the contents of which respondent *believes, though he is not certain, are correctly* stated in the bill—is wholly false."

In February, 1872, Brooks filed his written affidavit that Fleming, as he was informed and believed, had, on the 9th of March, 1869, violated the injunction by collecting of John J. West about one hundred dollars, and that since the issuance and service of the injunction, he had further violated it by collecting of Hugh Martin two hundred dollars, fees due the firm of Fleming & Brooks.

It is not denied that these fees were in cases of the business of Fleming before the partnership.

To the charge of violating the injunction, Fleming

Brooks *v.* Fleming.

files an answer of great length and detail, and denies that the articles of partnership can or should be so construed as to give Brooks any interest in fees in cases to which he never gave attention, and avers that it never occurred to him that any portion of such fees belonged to complainant, and had no thought of the injunction restraining their collection; insists that no part of either of the fees belongs to complainant—that they were due to respondent alone; that it was never understood that the agreement in regard to cases pending at the time of the formation of the partnership should be construed to give complainant an interest to any of the proceeds of such cases than to which he gave his personal attention; that Brooks never had anything to do with either of the two cases; and that he (Fleming) is wholly innocent of any thought or purpose to disregard the injunction.

The articles of partnership are not in the record; their absence is not sufficiently accounted for. The Chancellor convicted Fleming of the contempt, and decreed that he be fined fifty dollars; that he execute bond with security satisfactory to the court, conditioned that he will, on the final hearing of this cause, pay said sums so collected with interest if he shall be so required by decree, and in default thereof, that he be committed to the jail of Knox county and there detained until he does comply with the order.

This was error. There is no proof in this record in substantial conflict with the answer of Fleming. Upon it he was entitled to be discharged, unless it

has been overturned by the proof, and this has not been done.

The admissions of the answer already quoted are mainly relied upon against him. These may be taken as strictly true, and still are not so conflicting with his answer to the charge of contempt as to destroy its truth. The bill may substantially set out the terms of partnership and still leave out enough of its material provisions, which, when understood, would give it the construction claimed by Fleming, and this, too, when taken in its strongest terms; yet we are to bear in mind that it only expresses a *belief* that the articles are substantially set forth in the bill, the respondent stating, in terms, he is not certain. The fact that Brooks waited about three years in the one case and about four in the other, after the collection of the fees, before he complained that Fleming had violated the injunction, is very strong circumstantial evidence that he construed the terms of partnership as Fleming has done. But be this as it may, the articles are not before us, the burden is upon the party bringing the charge; and the parties now differing in construction, we must give that one consistent with innocence, and arising from a want of full proof.

The decree of the Chancellor on this motion is reversed and the motion discharged.

The order, so far as it requires a bond for the payment of the two fees collected by Fleming if a final decree shall require it, is left in force.

In entering upon the consideration of the motion to strike from the roll, we are met at the threshold

with the troublesome question, does an appeal or writ of error lie from the action of the Chancellor discharging the motion? We have availed ourselves of an authority in our reach likely to give us aid in the investigation, and have derived but little assistance. Upon principle, however, and considering the relation of the attorney to the county and the courts, we are of opinion no appeal will lie.

The power to strike from the rolls was conferred upon the courts for the purpose of enabling each to maintain order, good bearing and professional decorum, and to make each the guardian of its bar for the enforcement of morality and propriety in the conduct of its members. Of the proper observance of these things each court must be its own judge. The question to be enquired of in such cases is, ordinarily, one of morals and not of law. Legislation has done all it can do when it has entrusted the solution of such questions to the discretion of the court, and if, in the exercise of that discretion, he has declined the exercise of power, the relator cannot complain by appeal or writ of error.

The power exists inherently as well as by statute in each of the courts of the State. Each having original jurisdiction, they stand to each other as courts of concurrent jurisdiction, and the motion may as properly be made in a court of last resort as in one of general inferior jurisdiction. The failure of one relation is no bar to another to institute and present a similar motion for the same or similar causes in the same or another court. It is a matter concern-

22—VOL. 6.

ing the entire general public, and each citizen may, if he desires, have it inquired of. The failure of the relation no more aggrieves him than any other citizen, and the general rule is, that the party aggrieved only has the right of appeal.

The statute gives the right to the attorney. Without the statute he would perhaps have it, as he would be aggrieved in the deposition from an office in a limited sense. To strike him from the roll in one court, dissolves him in all.

The writ of error is dismissed.

FREEMAN, J., dissented, as follows:

I regret to be compelled to differ with a majority of my brethren on the question of the right of appeal to this court on the judgment of refusal to strike a party from the roll, not for a contempt in the face of the court, but for immoral conduct or other like cause.

I hold that all courts of the State are inferior courts by the Constitution, in the sense that they are subject to the revisory action of this as the Supreme Court of the State, and, therefore, that all judgments of such inferior courts are subject alike to this supervision. I can see no line of discrimination drawn in the Constitution between cases of one character and those of another, and only one arising out of the vicinity of the case, that is, the case of contempt in the face of the court. In this last case, I very much doubt the correctness of the rule as heretofore

held, but yield it as decided. In the case before us, the relator is the party who makes the motion, which is a suit or legal proceeding commenced for the purpose. On this motion he is entitled to have the judgment of the court on the proof adduced. If decided in his favor, that judgment may be revised by appeal or writ of error. I can see no reason why an erroneous judgment against the relator may not equally as well be revised by this court. In giving him a right to a judgment on his motion, it is fairly implied that he shall have the proper judgment of the law on the facts. If the court below fails to give this judgment, then it has erred, and it is the province of this court to come at such erroneous judgments, as I think, in all cases, except the single one referred to—perhaps, also, in cases of writs of *habeas corpus.*

I can see no distinction between this and all other cases of erroneous judgments. The party is aggrieved because he has not had the judgment of the law on the suit he has brought, and has the right, as I think, to have such grievance reversed if the facts warrant it.

On the facts of this case I express no opinion, not having examined the record. I therefore think the writ of error should have been allowed, and the correctness of the judgment determined by this court.