## PASS *v.* STATE.

*(Nashville,* December Term, 1943).

Opinion filed December 2, 1944.

614

ROBINSON & ROBINSON and L. E. GWINN, all of Memphis, for defendant-petitioner for *certiorari*.

NAT TIPTON, Assistant Attorney-General, of Nashville, WILLIAM GERBER, District Attorney-General, and CHARLES A. ROND, Assistant District Attorney-General, of Memphis, for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

On February 16, 1943, under the provisions of the Nuisance Act, Code section 9324 *et seq.*, a bill was filed in the name of the State on the relation of District Attorney-General against Joe Pass and his wife, Maggie Pass, by which an injunction was sought to restrain them from the illegal sale of intoxicating liquors in Shelby County. Three days later a final decree was entered *by consent of all parties*, under which Defendants were perpetually enjoined from the illegal sale of intoxicating liquors in said county.

On June 1, 1943, pursuant to the terms and provisions of the Nuisance Act, a petition was filed supported by affidavit charging a violation of the injunction and praying an attachment of the body of Joe Pass, and his punishment for contempt of court. Citation on the petition was issued and served, and on June 7, after defendant

had filed a sworn answer of denial, the court heard evidence and held that defendant, Joe Pass, was in contempt of court, sentencing him to serve 6 months in the county workhouse for the offense. From this judgment defendant prayed an appeal to the Supreme Court. We transferred the appeal to the Court of Appeals and that court affirmed the decree. The cause is again before us on petition for *certiorari* filed by the defendant.

The single question presented by the appeal and reiterated in the petition for *certiorari* is a determination whether on the citation for contempt defendant was entitled to a jury trial as a matter of right, and whether the denial of the right constituted reversible error. Defendant had demanded a jury in the sworn answer which he filed to the petition for citation and at the hearing of the cause, defendant's attorney renewed this demand. The trial judge denied the defendant a jury trial, and to this action of the court the defendant duly preserved his exceptions.

■ Defendant insists that because under the Nuisance Act (Code, section 9330) proceedings are to be had according to the forms of chancery court, that therefore, by section 10574 (which provides for juries in certain cases in chancery court), he was entitled to a jury trial. This is equivalent to an insistence that in any case (i. e. not under the Nuisance Act) of attachment for contempt for the violation of an injunction in the Chancery Court that the accused contemnor is entitled to a jury trial. This is not the law.

■ "The power to punish summarily by process of attachment, for contempts has been coeval with the existence of courts. Hasty thinkers, proceeding on false notions of liberty, have sometimes maintained, that this power is but little in harmony with the liberal institutions

of England and America. But on the contrary, it is obvious that wherever the laws govern, and not the bayonets of the executive power, the courts must be armed with this summary authority in order to attain the ends of their institution. *To courts of Chancery it is indispensable."* REESE, J., *Underwood's Case*, 21 Tenn. 46, 49. (Emphasis ours.)

"To this head of summary proceedings may also be properly referred methods immemorially used by the superior courts of justice of punishing contempts by attachment and the subsequent proceedings thereon." Blackstone Com., Book 4, Chapter 20, p. 283, Sharswood Ed.

"The whole process of a court of equity in the several stages of a cause, and finally to enforce its decrees, was, until the introduction of sequestrations, in the nature of a process for contempt, acting only *in personam* and not *in rem."* 2 Broom & Hadley's Commentaries, p. 567.

Jury trials are a comparatively recent innovation in the Chancery Court, but the authority of the Chancellor to punish for contempt is inherent in the office of Chancellor and as old as the court itself. Jury trials in chancery are not secured to the individual by constitutional guaranty. *Miller* v. *Washington County*, 143 Tenn. 488, 226 S. W. 199.

"The constitutional guaranty of trial by jury (Article 1, section 6), refers to common-law actions and not to suits of an equitable nature. (Citing cases.) . . .

"It is to be observed that section 10574 of the 1932 Code departs somewhat from section 4465 of the Code of 1858 providing for juries in chancery. Under the new Code a party is not entitled to a jury in chancery 'in cases involving complicated accounting, as to such accounting' and in cases 'elsewhere excepted by law or

by the provisions of this Code.' *So it is not every case in chancery in which a jury can be demanded, and the constitutional provision not applying to cases of an equitable nature, the chancellor has a much broader latitude in withdrawing issues from a jury than the circuit judge does in directing a verdict.*" *Hunt* v. *Hunt,* 169 Tenn. 1, 10, 80 S. W. (2d) 666, 669.

■ And a defendant was not entitled to a jury trial in contempt proceedings in any court at common law.

■ "The general rule is that a constitutional guaranty of jury trial does not apply to proceedings to punish for contempt of court whether in a court of law, a court of equity, a court having criminal jurisdiction, or other court. Punishment for contempt may be summary whether the contempt is direct or indirect, civil or criminal, whether the contempt consists in disobedience of an order of the court, insult, or in other conduct or omission, whether the acts constituting the contempt constitute also infractions of the criminal law, although of the grade of felony and whether imprisonment or fine is imposed or indemnity of an adverse party is decreed. Due process does not require a jury trial in such a proceeding." 31 Am. Jur., sec. 31, p. 579; *District of Columbia* v. *Colts,* 282 U. S. 63, 51 S. Ct. 52, 75 L. Ed. 177, 185; *In re Debs,* 158 U. S. 564, 565, 15 S. Ct. 900, 39 L. Ed. 1092.

■ ". . . For while it (the power to punish for contempt) is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. . . .

"There has been general recognition of the fact that the courts are clothed with this power, and must be authorized to exercise it *without referring the issues of*

*fact or law to another tribunal or to a jury in the same tribunal. . . .''* (Emphasis ours.). *Gompers* v. *Buck's Stove & R. Co.*, 221 U. S. 418, 450, 31 S. Ct. 492, 501, 55 L. Ed. 797, 809, 34 L. R. A. (N. S.) 874.

We, therefore, conclude that since the Chancellor has had authority to punish for contempt *summarily* since the institution of his office, the provision of the Nuisance Act that proceedings thereunder shall be held ''in accord-- ance with the procedure of court of chancery'' denies the right of a jury trial to the Defendant and the effect of the legislative grant to all courts having cognizance of proceedings under the Nuisance Act of ''the full jurisdiction and powers of courts of equity'' is to give all judges, as well as chancellors, authority to punish contempts under the Nuisance Act summarily, which is to say without the intervention of a jury. *State ex rel.* v. *Howse*, 134 Tenn. 67, 183 S. W. 510, L. R. A. 1916D, 1090, Ann. Cas. 1917C, 1125, where many authorities are cited to support the proposition·that ''summary proceedings'' are to be had without the intervention of a jury.

That section of the Nuisance Act which provides that violations of the injunctive process shall be punishable as contempts differs in no way from the general statutes, except that for a violation of an injunction under the Nuisance Act a contemnor can be sentenced to severer punishment; for general contempts the maximum punishment is imprisonment of not more than ten days and a fine of not more than $50, Code, section 10120; whereas under the Nuisance Act the punishment provided is imprisonment for not less than 30 days nor more than 6 months, and a fine of not more than $50.

There is no hint or suggestion in this section 9335 that the Legislature intended to provide for a jury trial. It has been universally held that where a jury trial

is a matter of right on an attachment for contempt, that such right must be founded on an express provision of a statute.

"A respondent in contempt proceedings is not entitled to a trial by jury, except where a jury trial is *expressly* provided for by the statute, and then only in the particular cases to which the statute applies." 35 C. J., section 99, p. 194.

While it has been held that the defendant may demand and have a jury to try the issues arising from the application for the injunction under the Nuisance Act, *State ex rel. Mynatt* v. *King*, 137 Tenn. 17, 191 S. W. 352, such issues are separate and distinct from those created by the citation for contempt. The authority to punish for such contempt, without interference or supervision, is an essential part of the discharge of the Chancellor's office. Our decisions are uniform in their holding that the question whether the orders of the Chancellor have been disobeyed or his dignity insulted, is a prerogative peculiarly personal to the Chancellor himself and a right which, in the final analysis, determines whether the discharge of the Chancellor's office shall be effective at all.

"The power of courts to punish for contempt is of immemorial antiquity, and is inherent in all courts as a necessary power belonging to them in order to enable them to accomplish the purposes for which they were designed; that is, the orderly trial and decision of causes, the enforcement of public order, the prevention of interferences with their proceedings, and the enforcement of the due respect belonging to them as institutions of the country." *Graham* v. *Williamson*, 128 Tenn. 720, 723, 164 S. W. 781, 782; *Gunter* v. *Seaboard Copper Min-*

*ing Co.,* 142 Tenn. 14, 215 S. W. 273; *Brooks* v. *Fleming,* 65 Tenn. 331; 17 C. J. S., Contempt, sec. 112, p. 150.

The opinion of the Court of Civil Appeals in the case of *Wortham* v. *State ex rel. Estes,* 6 Tenn. Civ. App. 362, when properly limited to the questions before the Court for decision there, is in no sense contradictory of what we have said. The proper limit of the decision was that the Nuisance Act was not summary in the sense that it required certain recitals in the final decree. No question of a trial by jury was made or decided in that case and a careful reading of the opinion clearly shows that the decision was no more than an approval of the early decision by GREEN, J., in the case of *Clingman* v. *Barrett,* 25 Tenn. 20, at page 22, where he says for the Court in passing upon the requirements for a final decree in a summary proceeding:

"In this case, there was no necessity or propriety in submitting the matter of this motion to a jury. The proof should have been heard by the court, and the facts, constituting the grounds of the motion, should have been recited in the judgment, as having appeared to the court. The fact that the cause commenced, by motion, before the justice of the peace, should not have changed the method of hearing the cause and rendering judgment, from that which would have been adopted had the cause commenced in the Circuit Court. But although the facts are not recited in the judgment, they are set out in the bill of exceptions; from which we can see the court had jurisdiction."

Writ denied.