**Michael Wallace SHERROD, Plaintiff/Appellant,**

v.

**Brenda Faye Sherrod WIX, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section at Nashville.

Oct. 14, 1992.

Application for Permission to Appeal Denied by Supreme Court March 1, 1993.

---

1. Appellee did not comply with Rule 14 of the court of appeals in making additions to the abridged transcript.

D. Ronald Ingram, Ingram & Love, Goodlettsville, for plaintiff/appellant.

Michael W. Edwards, Hendersonville, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal arises from a protracted dispute over the custody and visitation arrangements for a four-year-old boy who was born after his parents' divorce proceedings began. Soon after the Circuit Court for Robertson County awarded the mother the divorce and custody of the child, the father began a vigorous campaign to expand his visitation privileges and to obtain custody of his son. The trial court eventually denied the father's request for custody and restricted his visitation privileges. The trial court also found the father in contempt for violating an order enjoining him from harassing the mother and ordered him to pay the mother's legal expenses stemming from the custody dispute. The father takes issue on this appeal with the restriction of his visitation privileges, the contempt citation, and the award for legal expenses. We modify the award for legal expenses and affirm the remaining orders.

## I.

Michael Sherrod is a 33–year–old tobacco farmer from Robertson County. In August 1985, he married Brenda Faye (Sherrod) Wix, a licensed practical nurse who was six years his senior. Mrs. Wix had been married previously and had three children from her first marriage. Mr. Sherrod had not been married before.

The marriage was not a happy one. Mr. Sherrod was under a psychiatrist's care and took medication to control his behavior. The couple separated in late 1987, and Mr. Sherrod filed for divorce in December 1987. Mrs. Wix was pregnant at the time. She gave birth to a son in March 1988, and the litigation over the boy commenced even before she left the hospital because Mr. Sherrod believed that Mrs. Wix was interfering with his access to the baby.

Mrs. Wix later counterclaimed for divorce, and in May 1988, the trial court granted her a divorce on the ground of cruel and inhuman treatment and awarded her custody of the parties' son. The trial court also directed Mr. Sherrod to pay child support and determined that he should be permitted visitation on one week day and alternate Sundays.

Within months after the trial court's decision, Mr. Sherrod decided to launch an investigation into Mrs. Wix's activities because he thought that she was not permitting him to spend enough time with his son, that she was dating too many different men and using too many baby-sitters, and that she was associating with the wrong kind of people. In addition to hiring a private investigator, Mr. Sherrod began to follow Mrs. Wix around and to rummage through her garbage to obtain evidence to use against her.

In November 1988, Mrs. Wix filed a petition requesting the trial court to enjoin Mr. Sherrod from coming about her residence or from molesting or harassing her. On December 2, 1988, the trial court entered an order stating, in part:

That Michael Wallace Sherrod is hereby enjoined from coming about the said Brenda Faye Wooten Sherrod except to exercise his visitation with the parties' minor child; further he is enjoined from harassing her, from following her, from going upon any resident property in which she occupies as a home except to exercise visitation and from picking up her garbage from any residence in which she resides.

Mr. Sherrod filed a petition in May 1989 seeking custody of his son. He alleged that he had "received" information that Mrs. Wix was "having undesirable persons around the child" and that "said person or persons are remaining in the home where the child is for extended periods of time at night." No action was taken on this petition, and in May 1990, he filed another petition seeking increased visitation with his son.

Mr. Sherrod decided that Mrs. Wix and her attorney were frustrating his efforts to obtain the information he needed to support his requests for increased visitation or for a change in custody and that his own lawyer was not pursuing discovery as vig-

orously as he should. Accordingly, he fired his lawyer and set out on his own to obtain additional information about Mrs. Wix who had since remarried.

The scheme Mr. Sherrod devised for obtaining additional proof involved sending Mrs. Wix a questionnaire asking personal questions about her current marriage. Using the name of "Modern Women Research" and a post office box of his own, he sent Mrs. Wix a questionnaire promising a free subscription to a popular women's magazine if she returned the completed questionnaire within ten days. Mrs. Wix completed the questionnaire and returned it to Mr. Sherrod's post office box.

Mrs. Wix did not discover what Mr. Sherrod had done until a January 1991 hearing when his lawyer produced the questionnaire and began to cross-examine her based on her responses. Mr. Sherrod admitted that he sent the questionnaire to Mrs. Wix but then declined to elaborate on his scheme after the trial court and his attorney advised him that he could be incriminating himself. At the conclusion of the hearing, the trial court found that sending the questionnaire was harassment in violation of its December 1988 injunction[1] and that Mr. Sherrod was in contempt. The trial court gave Mr. Sherrod a suspended thirty-day sentence and informed him that he would be incarcerated immediately for any other contemptuous acts. The trial court also directed that a transcript of the proceedings be forwarded to the United States Attorney to determine whether a criminal violation of the postal laws had been committed.

On the day after the hearing, Mr. Sherrod and his lawyer decided to send Mrs. Wix the magazine subscription she had requested in her questionnaire. Accordingly, Mrs. Wix later received a card stating that the subscription was "a gift with best wishes from" Mr. Sherrod. Mrs. Wix requested that Mr. Sherrod be held in contempt, and the trial court, in an April 17, 1991 order, found Mr. Sherrod to be in

contempt and sentenced him to ten days in jail.

Mr. Sherrod perfected an appeal to this court. Following oral argument in January 1992, Mr. Sherrod alleged that documents had been removed from the trial court's file and that Mrs. Wix's attorney had attached an order to his brief that differed materially from the order actually entered by the trial court. After receiving responses from the trial court clerk and Mrs. Wix's attorney, this court remanded the record to the trial court to enable the parties to resolve their differences concerning the proper contents of the record. The trial court certified that the corrected record was complete on June 23, 1992, and the clerk of this court received the corrected record on July 22, 1992. Both parties have now filed supplemental briefs, and the appeal is ready for decision.

## II.

We take up first Mr. Sherrod's challenge to the trial court's decision to change his visitation privileges from every week to every other week with four weeks of visitation during the summer. Our ability to deal with this issue is hampered by the absence of either a transcript of the proceedings in the trial court or a statement of the evidence prepared in accordance with Tenn.R.App.P. 24(c).

■ When a trial court decides a case without a jury, it's findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn.R.App.P. 13(d). This court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings. *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn.Ct.App.1989); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn.Ct.App.1987); *Gotten v. Gotten*, 748 S.W.2d 430, 432 (Tenn.Ct.App.1988).

---

1. The trial court specifically found that
   Now it wasn't harassment to her when she got the questionnaire and filled it out and mailed it off. She didn't know he had done it. She found out today that he did and the Court considers that harassment within the meaning of the word in the restraining order.

Custody and visitation arrangements are customarily left to the trial court's discretion. *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn.Ct.App.1973). Even though the appellate record does not contain a transcript or statement of the evidence, we have reviewed the trial court's detailed findings of fact and conclusions of law and can find no basis for second-guessing its decision with regard to Mr. Sherrod's visitation rights. The trial court's visitation arrangements reflect the trial court's awareness of the importance of enabling children to develop and maintain a strong relationship with their noncustodial parent. *See Bryan v. Bryan,* 620 S.W.2d 85, 88 (Tenn.Ct.App.1981); *Dillow v. Dillow,* 575 S.W.2d 289, 291 (Tenn.Ct.App. 1978).

### III.

Mr. Sherrod also takes issue with the trial court's decision to require him to pay $4,559 of his wife's legal expenses stemming from this litigation. He asserts that the award should be set aside because (1) he has not "been able to accurately determine the amount of attorney fees incurred by the Appellee," (2) that a portion of the fees were for work not directly related to the custody issue, and (3) that a portion of the fees were incurred for "efforts to have Appellant investigated."

### A.

Mrs. Wix did not request an additional award for legal expenses during the original divorce and custody proceeding. She first sought reimbursement for her legal expenses in July 1989 in response to Mr. Sherrod's motion for a change of custody.

At the conclusion of the January 9, 1991 hearing, the trial court awarded Mrs. Wix $3,500 for her legal expenses. Both Mr. Sherrod and Mrs. Wix filed timely motions to alter or amend the judgment with regard to the attorney's fees. Mrs. Wix's attorney pointed out that his customary rate was $100 per hour, not $75 per hour as found by the trial court. Mr. Sherrod asserted that he had been proceeding in good faith and that Mrs. Wix's expenses included charges for matters stemming from the original divorce proceeding and other unrelated matters.

The trial court held a hearing on the parties' motions on April 2, 1991. Mrs. Wix's attorney stated that his normal hourly rate had been $100 per hour for the past three years and that he had contracted with Mrs. Wix to represent her for $100 per hour. He also submitted an affidavit showing that Mrs. Wix had incurred $4,020 in legal expenses from June 19, 1989 through January 23, 1991.

Mr. Sherrod did not object to Mrs. Wix's attorney's hourly rate and did not request permission to put on proof concerning the reasonableness of the fees or expenses. His lawyer pointed out that part of the expenses had been incurred to represent Mrs. Wix's current husband in a criminal proceeding and to write letters to Mrs. Wix's former husband and that his conduct was not the sole reason for Mrs. Wix's legal expenses.

Following the hearing, Mrs. Wix's attorney submitted a revised affidavit reflecting the time spent at the April 2, 1992 hearing. It stated that Mrs. Wix had now incurred $4,559 in legal expenses, and, except for the additional time for the April 2, 1991 hearing and some court reporting expenses, it was identical to the earlier affidavit. The trial court entered an order on April 17, 1991 directing Mr. Sherrod to pay Mrs. Wix's attorney $4,559.

### B.

Trial courts have long had the authority to award legal expenses in custody or support proceedings. These awards are not primarily for the benefit of the custodial parent but rather to facilitate a child's access to the courts. *Graham v. Graham,* 140 Tenn. 328, 334–35, 204 S.W. 987, 989 (1918).

Tenn.Code Ann. § 36–5–103(c) (1991) codifies the courts' power to make these awards and provides:

The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable at-

torney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

As a result of this statute, the Tennessee Supreme Court has noted that awards for legal expenses in custody or support proceedings are "familiar and almost commonplace." *Deas v. Deas,* 774 S.W.2d 167, 170 (Tenn.1989).

■ Tenn.Code Ann. § 36–5–103(c) states that awarding legal expenses in custody and support proceedings is discretionary with the trial court. However, the appellate courts have not necessarily been consistent in identifying the considerations on which these discretionary decisions should be made. Some panels follow the criteria used to award legal expenses in divorce proceedings and refuse to approve awards in the absence of proof that the party requesting the fees is unable to pay his or her lawyer. *Johnson v. Johnson,* App. No. 01–A–01–9103–CV–00107, slip op. at 13, 16 T.A.M. 39–10, 1991 WL 169568 (Tenn.Ct.App. Sept. 4, 1991)[2] (citing *Fox v. Fox,* 657 S.W.2d 747 (Tenn.1983)). Others have approved awards even in the absence of proof of inability to pay and have pointed out that ability to pay is not a prerequisite for awarding legal expenses under Tenn.Code Ann. § 36–5–103(c). *Gaddy v. Gaddy,* App. No. 03–A–01–9109–CV–306, slip op. at 9, 17 T.A.M. 17–18, 1992 WL 63441 (Tenn.Ct.App. April 1, 1992), *perm. app. denied* (Tenn. Oct. 26, 1992).

Like the Eastern Section in *Gaddy v. Gaddy,* we find that ability to pay should not be the controlling consideration with regard to awards for legal expenses in custody or support proceedings. It is certainly a factor to be considered, but trial

courts may award attorney's fees without proof that the requesting party is unable to pay them as long as the award is just and equitable under the facts of the case. The purpose of these awards is to protect the children's, not the custodial parent's, legal remedies. Accordingly, requiring parents who precipitate custody or support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy.

### C.

■ Trial courts may act upon requests for legal expenses without a fully developed record as long as the party opposing the request has been afforded a fair opportunity to cross-examine the requesting parties' witnesses and to present proof of its own on the issue. *Kahn v. Kahn,* 756 S.W.2d 685, 696 (Tenn.1988); *Wilson Management Co. v. Star Distributors Co.,* 745 S.W.2d 870, 873 (Tenn.1988). Mr. Sherrod did not object to the procedure used by the trial court to determine the amount of the attorney's fees award and did not insist on cross-examining Mrs. Wix's lawyer or offering proof of his own. Accordingly, we find that the trial court had before it sufficient evidence to make an award for legal expenses.

■ Based on the facts of this case, the trial court properly determined that Mr. Sherrod should pay the legal expenses Mrs. Wix incurred in responding to his request for a change in the custody. Mr. Sherrod precipitated these proceedings, and the obsessive way he pursued Mrs. Wix prolonged the proceedings and added significantly to their expense. He did not ultimately carry the day, and many of his allegations were eventually found to be unwarranted.

However, we do not agree with the amount of legal expenses awarded by the trial court. While we have no basis to disagree with the reasonableness of Mrs. Wix's lawyer's hourly rate,[3] we find that

---

2. No Tenn.R.App.P. 11 application for permission to appeal was filed in this case.

3. The proof is uncontradicted that Mrs. Wix's attorney had been charging the hourly rate approved by the trial court for at least three years and that he and Mrs. Wix had agreed on this rate when she employed him to defend against Mr. Sherrod's custody petition.

the services performed on February 1, 1990 with regard to the letters to Mrs. Wix's first husband and on March 6, 1990 with regard to representing Mrs. Wix's current husband in a criminal proceeding were not directly related to the custody dispute and should not have been approved. Therefore, on remand, we direct the trial court to enter an order reducing the award for legal expenses from $4,559 to $4,329.

### IV.

■ In his final issue, Mr. Sherrod asserts that his contempt citation is "contrary to law and/or contrary to the evidence." We disagree. Sending the magazine subscription to Mrs. Wix was, in the trial court's words, an act "in furtherance of the carrying out [of] his efforts to harass Mrs. Wix."

During the January 9, 1991 hearing, the trial court found that Mr. Sherrod had violated the December 1988 restraining order by coming around Mrs. Wix, by pilfering through her garbage, and by admitting that he had sent her a fictitious questionnaire inquiring into the intimate details of her relationship with her current husband. The trial court found Mr. Sherrod in contempt, but suspended the sentence "pending [Mr. Sherrod's] behavior." The trial court pointed out:

> You are an extremely bright person, a gifted person. You understand things very well. This Court has no doubt that you know the difference between whether your conduct is proper or not. And I absolutely will not tolerate any further conduct that violates any order that I hand out. Period.

The very next day, with the trial court's warning ringing in his ears, Mr. Sherrod ordered the magazine subscription that Mrs. Wix had requested. When Mrs. Wix received a gift card stating that the subscription was from Mr. Sherrod, she asked the trial court to punish him for contempt.

Mr. Sherrod's only explanations for his conduct were that he had no other way to obtain the information from Mrs. Wix and that failing to send the gift subscription would have violated the postal laws. The trial court found Mr. Sherrod in contempt for sending the subscription, and therefore, we need only examine the trial court's action in light of this conduct.

■ Determining whether its order has been followed is the prerogative of the trial court, *McCraw v. Adcox*, 217 Tenn. 591, 595–96, 399 S.W.2d 753, 755 (1966); *Pass v. State*, 181 Tenn. 613, 620, 184 S.W.2d 1, 4 (1944), and is uniquely within the trial court's discretion. *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). No question exists concerning Mr. Sherrod's conduct since he admitted that he sent the magazine subscription to Mrs. Wix. There is also no dispute that the knowledge that the subscription was from Mr. Sherrod upset Mrs. Wix. Therefore, we have no basis to second-guess the trial court's determination that Mr. Sherrod's acts were contemptuous.

Mr. Sherrod's attempt to excuse his conduct by stating that he was attempting to avoid mail fraud charges rings hollow on appeal just as it did in the trial court. His predicament was one of his own making. He chose to send the fictitious questionnaire. In light of the trial court's stern warning during the January hearing, he could have sought guidance from the court concerning the subscription had he really been planning to send the subscription all along.

■ Even though the trial court at one point stated that it was citing Mr. Sherrod for civil contempt, Mr. Sherrod's conduct was more properly criminal contempt.[4] Tenn.Code Ann. § 29-9-103 (Supp. 1992) limits the punishment for criminal contempt to imprisonment for ten days and a fifty dollar fine. We find that the trial

---

4. Civil contempt is intended to benefit a litigant while criminal contempt is punishment for an offense against the authority of the court. *Garrett v. Forest Lawn Memorial Gardens*, 588 S.W.2d 309, 315 (Tenn.Ct.App.1979). Civil contempt is imposed to compel compliance with an order, and parties in contempt may purge themselves by compliance. Criminal contempt, on the other hand, is punishment for failing to comply with an order, and the contemptuous party cannot be freed by eventual compliance. *Shiflet v. State*, 217 Tenn. 690, 693, 400 S.W.2d 542, 543 (1966); *Crabtree v. Crabtree*, 716 S.W.2d 923, 925 (Tenn.Ct.App.1986).

court's imposition of a ten-day sentence for contempt of court was justified and entirely consistent with Tenn.Code Ann. § 29–9–103.

### V.

Mrs. Wix asserts that Mr. Wix's appeal is frivolous and that she should be awarded damages in accordance with Tenn.Code Ann. § 27–1–122 (1980). While we have been prevented from considering several of Mr. Sherrod's factual issues because of the absence of either a transcript or a statement of the evidence, we do not find this appeal to be wholly insubstantial or brought solely for the purpose of delay. Accordingly, we decline to award Mrs. Wix damages for a frivolous appeal.

### VI.

We affirm the judgment as modified herein and remand the case to the trial court for further proceedings consistent with this opinion. We also tax the costs of the appeal to Michael Wallace Sherrod and his surety for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.