# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 1999 Session

## LISA LEE LEVENHAGEN v. DARBY LON LEVENHAGEN

**Appeal from the Circuit Court for Lincoln County**
**No.C9800050      Lee Russell, Judge**

---

**No. M1998-00967-COA-R3-CV - Filed September 14, 2000**

---

Husband appeals the trial court's refusal to vacate its order divorcing the parties, claiming the order is void because it failed to include an affirmative finding that the parties made adequate provision by written agreement for the custody and maintenance of their children. In addition, Husband contends that the trial court violated his due process rights by suspending his visitation with the couple's children until he received counseling, and then ordering supervised visitation. He also maintains that the trial court improperly based its finding that he was guilty of criminal contempt for failure to pay child support on insufficient evidence. Husband claims he was entitled to a jury trial on the contempt issue. We affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and W. FRANK CRAWFORD, J., joined.

Billy K. Tollinson, McMinnville, Tennessee, for the appellant, Darby Lon Levenhagen.

Neil Morholt, Fayetteville, Tennessee, for the appellee Lisa Lee Levenhagen.

## OPINION

The parties, Darby Lon Levenhagen ("Husband") and Lisa Lee Levenhagen ("Wife") were married in March 1989. They have two minor children. The couple's daughter was born in 1992 and their son was born in 1993. Wife filed her petition for divorce on March 4, 1998, alleging inappropriate marital conduct and irreconcilable differences. The petition "refrain[ed] from alleging any specific details constituting grounds for divorce" unless Husband made proper application under

Tenn. Code Ann. § 36-4-106.[1] According to Husband's counsel, Wife did not wish to explain the details of her allegations "for the sake of the children." Husband counterclaimed on the same grounds and denied that he had been guilty of inappropriate marital conduct. In her response to the counterclaim, Wife agreed that irreconcilable differences existed, but denied engaging in inappropriate marital conduct.

After discovery and a hearing which is not a part of the record on appeal, the trial court entered a detailed divorce decree on July 6, 1998. In the decree the trial court found that the parties should be divorced pursuant to Tenn. Code Ann. §36-4-129(a), but did not specify the grounds. The decree granted Wife sole custody of the children with liberal visitation to Husband on specific days and times. The decree also granted the parties, *inter alia*, the right to send mail to the children without the other opening or censoring it and the right to be free from unwarranted derogatory remarks made about the other parent or that parent's family. The decree ordered Husband to pay the monthly sum of $410.55, which included a 5% clerk's fee, to the clerk's office on "the first day of each and every month, beginning September 1, 1998." It divided the parties' property and debts and restrained them from "coming around, about, or near" each other at their respective residences except as necessary to comply with the visitation order. In addition, Husband was specifically "enjoined from taking the minor children to any mental health care facility while they are in his physical custody." Both parties were prohibited from "having a person to whom he or she is not married, unrelated, stay overnight wherever said minor children are also present."

Just weeks after entry of the decree, Wife filed a notice for a hearing requiring Husband to show cause why he should not be held in contempt. Two of the issues raised in this appeal stem from the post-divorce proceedings following this petition. One issue, however, addresses the validity of the divorce decree itself, and we will address that issue before proceeding with the procedural history related to the post-decree issues.

## I.

In September of 1998, after hiring new counsel and in the midst of post-divorce disputes, Husband filed a motion to vacate the divorce decree pursuant to Tenn. R. Civ. P. 60.02. He argued that the decree, which was approved by Husband's counsel, was void because the trial court failed to affirmatively find that the parties made adequate and sufficient provision by written agreement for the custody and maintenance of the children and for the equitable settlement of any property rights as required by Tenn. Code Ann. § 36-4-103(b) (1996). After a hearing the trial court denied the motion to vacate. In this appeal, Father asserts that this denial was error.

---

[1]Tenn. Code Ann. § 36-4-106(a) provides, in pertinent part, as follows:

In cases wherein an answer is filed, the court shall, on motion of the defendant, require the complainant to file a bill of particulars, setting forth the facts relied on as grounds for the divorce, with reasonable certainty as to time and place.

To set aside a judgment under rule 60.02 the burden is upon the movant to prove that he is entitled to relief, and there must be proof of the basis on which relief is sought. *Brumlow v. Brumlow,* 729 S.W.2d 103, 106 (Tenn. Ct. App. 1986); *Jefferson v. Pneumo Services Corp.,* 699 S.W.2d 181, 186 (Tenn. Ct. App. 1985). A motion for relief from a judgment pursuant to Rule 60.02 addresses the sound discretion of the trial judge; the scope of review on appeal is limited to whether the trial judge abused his discretion. *Toney v. Mueller Co.*, 810 S.W.2d 145 (Tenn. 1991); *Travis v. City of Murfreesboro*, 686 S.W.2d 68, 70 (Tenn. 1985).

Rule 60.02 "was designed to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). With regard to the purpose of the rule, this Court recently stated, "Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.,* 798 S.W.2d 235, 238 (Tenn. 1990). Because of the importance of this "principle of finality," the "escape valve" should not be easily opened.

*Banks v. Dement Constr. Co., Inc.,* 817 S.W.2d 16, 18 (Tenn. 1991) (citing *Toney*, 810 S.W.2d at 146).

Father argues that the divorce decree must be set aside as invalid because it did not meet the statutory requirements for a divorce on grounds of irreconcilable differences, as provided in Tenn. Code Ann. § 36-4-103(b). That statute requires, among other things, that the trial court affirmatively find in its decree "that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties." Tenn. Code Ann. § 36-4-103(b). While Father is correct that the decree includes no such finding, that requirement only applies to a divorce on the ground of irreconcilable differences. The record herein does not indicate that the parties' divorce was granted on those grounds, making the statutory requirements inapplicable.

The final decree of divorce stated:

It . . . satisfactorily appearing to the Court that a decree of divorcement should be entered pursuant to Tennessee Code Annotated, Section 36-4-129(a) granting a decree of divorcement to the plaintiff, Lisa Lee Levenhagen, and the defendant, Darby Lon Levenhagen . . . It is therefore, ordered, adjudged and decreed by the Court that the bonds of matrimony uniting . . . [the parties] be and hereby are absolutely and perpetually dissolved. . . .

Thus, the decree was entered pursuant to Tenn. Code Ann. § 36-4-129(a), which provides:

(a) In all actions for divorce from the bonds of matrimony or legal separation, the parties may stipulate as to grounds and/or defenses.

Both parties herein alleged the other was guilty of inappropriate marital conduct, and the court had authority to declare the parties divorced upon either proof of or stipulation to those grounds. *See* Tenn. Code Ann. § 36-4-129(b).

At the hearing on the motion to vacate, Father agreed with the court that the divorce had been granted on stipulated grounds, but contended that those grounds were irreconcilable differences. Father argues that the parties' pleadings reflect that each contested the allegation of inappropriate marital conduct against him or her but each agreed that they had irreconcilable differences. However, Father has provided no evidentiary support showing that the parties did not ultimately stipulate to inappropriate marital conduct as grounds for the divorce. No transcript of the divorce hearing has been filed. Further, the trial court's remarks at the hearing on the motion to vacate indicate that it interpreted the divorce decree as based on stipulations as to fault grounds.

The decree on its face establishes that the divorce was not granted on the ground of irreconcilable differences. First, the trial court specifically referenced Tenn. Code Ann. § 36-4-129(a). Second, the trial court explicitly and painstakingly divided the parties' property and debts in the decree, a process not required when the parties agree to such division in a marital dissolution agreement required in an irreconcilable differences divorce. Similarly, the trial court made an award of custody and visitation of the parties' children. The decree does not mention a marital dissolution agreement, again a requirement of an irreconcilable differences divorce.

Without any record supporting his contention, Father would have us presume that the trial court ignored the statutory requirements for granting an irreconcilable differences divorce when the more logical conclusion, and that supported by the decree, is that the court declared the parties divorced on the basis of stipulations to the grounds of inappropriate marital conduct. On the record before us we must assume, as we did in *Mackie v. Mackie*, No. 01A01-9810-CV-00536, 1999 WL 675134 at * 1 (Tenn. Ct. App. Sept. 1, 1999) (no Tenn. R. App. P. 11 application filed), that the trial court's decree of divorce was supported by the facts, *i.e.*, that the parties stipulated to fault-based grounds. *See also Sherrod v. Wix,* 849 S.W.2d 780, 783 (Tenn. Ct. App.1992). This precludes us from finding that the trial court exceeded its discretion in denying Husband's Rule 60.02 motion.

II.

As stated above, less than three weeks after entry of the final decree, Wife filed a notice for a hearing requesting that Husband's rights to unsupervised visitation be suspended, that the children be returned to Wife's custody, and for an order to show cause why Husband should not be held in contempt of court. Wife alleged that Husband had: (1) falsely reported to the Department of Children's Services that Wife had committed child abuse against the youngest child; (2) refused to allow Wife unimpeded telephone conversations with the children during visitation; (3) made repeated derogatory remarks about Wife and her family in the children's presence; (4) made a concerted effort during visitation to sway the children against Wife; (5) repeatedly took the children to a mental health care facility during visitation; and (6) allowed a member of the opposite sex to stay overnight while the children were visiting.

A hearing on Wife's petition was held August 3, and a transcript of that hearing is not a part of the appellate record.[2] It is clear, however, that the August 3 hearing resulted in an immediate suspension of Husband's visitation and an order that the children be evaluated. In an August 4 letter discussing the events of the previous day, the court notified counsel for the parties that Mr. Kent Lewis, M.S. D.Min., was designated to meet with and counsel the children. The court noted that Mr. Lewis was to assist the children in coping with the divorce and "the enormous friction between the parents." In addition, the court wanted the counselor to determine, if he could, whether the children had been coached to relate stories about their mother's treatment of them. The court stated, "I want advice on how quickly to recommence visitation by the father and with what restrictions. Obviously the father will need to have visitation again, but I need to know how much harm is being done by the father." The court observed that "the children have been the ropes in a psychological tug of war between the parties. This must be stopped. After we have heard from the counselor, I suggest that the three of us attempt to craft a visitation agreement that will minimize the problem." The letter also stated:

> If the father wants to communicate information to the counselor, I have no problem with that. I assume that the mother will do so. If the counselor wants to meet with the parents, together or separately, I will require that the parties do so. If the counselor prefers to receive information from the parents only through their attorneys, that is also fine.

> As you both know, I was uncertain after the daughter testified whether she was testifying honestly or had been coached. After the testimony of both parties, I began to believe that in fact the daughter had been coached. On the other hand, I want the input of a counselor on that, and as soon as possible. If you can agree to submit a report, that would be great, but if you cannot, I understand, and the counselor's deposition should be taken. I think you should be allowed to talk to him if you want.

The trial court ultimately found that, "the defendant [Husband] is actively seeking to undermine the relationship between the plaintiff [Wife] and the parties' minor children, that these efforts by the defendant have created a threat to the psychological health of the children and to the relationship between the plaintiff and the children . . . " The trial court then suspended all Husband's visitation or contact with the children until Husband "enter[ed] into ongoing psychological counseling." The court held that supervised visitation would be permitted only upon written proof by a licensed therapist that Husband had entered into regular counseling. The court indicated that supervised visits could be considered transitional, the ultimate goal being resumption of unsupervised visitation.

---

[2]Our knowledge of the unrecorded August 3 hearing comes from the court's order entered September 10 regarding the issues heard August 3 and from the transcript of a September 10 hearing, both of which indicate that oral testimony was taken at the August 3 hearing in open court and in chambers.

The designated counselor, Mr. Lewis, interviewed both parents and the children and forwarded a report to the trial court. Both parties received copies. Although discussed in subsequent hearings, the report was never included in the record on appeal.

A hearing was set for September 10 on Husband's motion for an order to set visitation. That issue was deferred, however, at the request of Husband's new attorney who appeared on September 10 for approval of substitution of counsel and to request a continuance. At the September 10 hearing, Husband's new counsel informed the court he would be filing several motions. The court remarked that the hearing had originally been set "in order to get visitation reinitiated because it was cut off until we could have the evaluation." The court expressed a willingness to set up visitation for Husband upon proof he had entered counseling. Through counsel, Husband asserted he was disputing the need for supervision of his visitation. After this argument was presented, the court remarked to Husband's attorney:

> The practical effect of what you are going to do is give him no visitation at a time
> when I would give him supervised visitation . . . But that's your call, if you want to
> do that.

Rather than responding to this point, Husband's counsel simply reiterated his grounds for challenging the proceedings in order to create a record for appeal. The hearing concluded without a lifting of the suspension of visitation. However, the court scheduled a hearing for September 22 to address the issue.

Husband then filed a motion to vacate or amend the September 10 order[3] because he had not had the opportunity to provide evidence contradictory to Mr. Lewis's report or to object to the report. A hearing was held on this motion on September 22, along with Husband's motion requesting an independent evaluation of the children, claiming the court appointed counselor was biased toward Wife. The trial court denied the motion to vacate the September 10 order and granted the motion for an evaluation of the children by a qualified counselor chosen by Husband for limited purposes. The court reaffirmed its order allowing Husband supervised visitation upon proof he had entered into counseling, amended the order to allow supervision by Wife's mother and Husband's mother, set specific times for the visitations, and ordered that unsupervised visitation proceed in accordance with the divorce decree after eight weeks of supervised visitation. Because Husband had still not presented evidence that he had begun counseling, the court did not order visitation reinstated at the time. At the hearing, Husband first resisted a proposal by the court that supervised visitation could resume upon Husband's supplying written proof he had started counseling, obviating the necessity for another hearing and its attendant delay. Husband eventually agreed to that procedure.

On appeal, Husband argues that the trial court erred by refusing to vacate its September 10 order suspending visitation because the failure to provide him with the opportunity to cross-examine

---

[3]The motion was styled "Motion to Vacate or Amend Order Entered on September 9, 1998 Regarding the Hearing on August 3, 1998."

or provide witnesses to counter the opinion of the court appointed counselor violated his due process rights. He asserts that "the due process violation occurred at the point in time where the court relied upon the reports and recommendations of . . . [the counselor] as indicated by the September 10, 1998 order when deciding to suspend Mr. Levenhagen's visitation rights with his children without first giving Mr. Levenhagen the opportunity to cross-examine . . . [the counselor] and to provide evidence of his own that it was in the best interest of the children not to suspend visitation with their daddy especially in light of the fact that . . . [the counselor's] reports appear on their face to be bias [sic]." Thus, Husband objects to the suspension of his visitation to the extent that suspension resulted from Mr. Lewis's report and recommendation.

Husband's argument suffers from the fatal flaw that he has not demonstrated that the suspension of visitation resulted in any degree from Mr. Lewis's report. To the contrary, the record is clear that the trial court suspended visitation immediately on August 3 as a result of evidence at the hearing. The court's August 4 letter stated it wanted advice from the counselor on "how quickly to recommence visitation by the father," noted the father obviously needed to have visitation again, and suggested that the attorneys and judge, after hearing from the counselor, attempt to draft a visitation agreement that would minimize the effects on the children of their parents' "tug of war" over them. In addition, statements made by counsel and the court at the various subsequent hearings clearly establish that Husband's visitation was suspended as a result of evidence taken at the August 3 hearing.

Based on that evidence, the court found that Husband was seeking to undermine the children's relationship with their mother, thereby creating a threat to their psychological health. On appeal, Husband does not challenge these findings. Further, no transcript or statement of the evidence from the August 3 hearing is included in the record. Therefore, we are required to presume that the trial court's findings are supported by the evidence. *See J. C. Bradford & Co. v. Martin Constr. Co.*, 576 S.W.2d 586, 587 (Tenn. 1979). Presuming these findings to be accurate, we find no error in the trial court's suspension of Husband's visitation pending counseling. *See In Re Rockwell*, 673 S.W.2d 512, 516 (Tenn. Ct. App. 1983).

In fact, Husband does not now complain of the initial suspension of visitation. His complaint appears to arise from the requirement that the initial visits be supervised, even though the court made clear its intention that the supervised visits be a temporary transition to resumption of unsupervised visits pursuant to the divorce decree. He asserts the requirement of supervised visits resulted from Mr. Lewis's report and recommendation and that Mr. Lewis's report was favorable to Wife and biased against Husband. Husband has not provided us with a copy of Mr. Lewis's report; consequently he has failed to provide any support for these allegations.

Trial courts are vested with wide discretion in matters of visitation. *See Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973). Precedent precludes us from disturbing a lower court's

determination on this issue absent a showing that the court below abused its discretion.[4] *See Suttles v. Suttles,* 748 S.W.2d 427, 429 (Tenn. 1988). In light of the trial court's expressed concerns that the children were the objects of a psychological tug of war between the parents and the findings that Husband had tried to undermine Wife's relationship with the children, we cannot say that the trial court abused its discretion by ordering that Husband's visitation temporarily be supervised.

Husband's argument that his due process rights were violated because he was not permitted to cross examine the court appointed counselor or present witnesses to oppose him lacks merit. Husband's request for an independent evaluation to counter the court appointed counselor's opinion was granted. Nothing in the record indicates that Husband sought any relief based on the independent examination. Although the trial court's August 4 letter invites counsel to depose the court appointed counselor or voice objections to his report, nothing in the record indicates that Husband did so.

Moreover, "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494, 503 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 656, 94 L. Ed. 865, 873 (1950)); *Gay v. City of Somerville*, 878 S.W.2d 124, 129 (Tenn. Ct. App. 1994). We are unpersuaded by Husband's due process argument because we see no evidence that Husband was deprived of adequate notice or the opportunity to be heard. He participated with counsel in the August 3 hearing, he was given the opportunity to question the counselor, and he was allowed to choose his own counselor to evaluate the children.

III.

On November 12, the trial court heard Wife's request that Husband be held in contempt and found him guilty of criminal contempt for failure to timely pay child support. Husband argues that this was error because the evidence of willfulness was insufficient. He also claims that the fact that he was current on his support payments at the time of the hearing shows his failure to pay was not willful. At the contempt hearing, in fact, Husband solely relied on the fact he had paid all support owed, as of the day of the hearing.

---

[4]In *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 145 (Tenn. 1981), the Supreme Court defined "abuse of discretion" as follows:

> The term has too often implied intentional wrong, bad faith or misconduct on the part of a trial judge. In our view, "abuse of discretion" was never intended to carry such a meaning, nor to reflect upon the trial judge in any disparaging manner. To us the phrase simply meant an erroneous conclusion or judgment on the part of the trial judge--a conclusion that was clearly against logic (or reason) and not justified.

When the sufficiency of the evidence in a criminal contempt case is raised on appeal, this Court must review the record to determine if the proof adduced at trial supports the finding of the trier of fact of guilt beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e).

> We do not reweigh the proof. The defendant has the burden of illustrating to this Court why the evidence is insufficient to support the verdict. A guilty verdict removes the presumption of innocence and it is replaced with a presumption of guilt. We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. [*State ex rel. Anderson v.*] *Daugherty*, 137 Tenn. [125] at 127, 191 S.W. at 974 [(1917)]; *State v. Creasy,* 885 S.W.2d 829, 831.

*Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996).

Applying that standard to the facts in this case, we find that the evidence was clearly sufficient to support the trial court's decision. The trial court was authorized to impose punishment for criminal contempt upon a finding beyond a reasonable doubt of willful disobedience or resistance to its decree. *See id.*; Tenn. Code Ann. § 29-9-102(3).

On July 6, 1998 Husband was ordered to pay $410.55 in child support. By court order, this amount was:

> due and payable by the defendant to the plaintiff through the Circuit Court Clerk's office the first day of each and every month, beginning September 1, 1998, with each party supplying to the other party continuing wage statements.

The evidence at the contempt hearing showed that on September 4, 10, and 23, 1998, Husband paid $80 to the Clerk's office. He paid $194.24 on October 28 and $221.26 on November 4. On the day of the hearing, November 12, Husband brought his arrearage current for the first time since the support order was imposed with a payment of more than $596. On appeal, Husband does not contest his ability to pay. Husband did not even raise the issue in the trial court, and presented no evidence that he had been unable to timely pay the amounts ordered. The evidence showed that he did not make the payments as ordered. The fact that he brought his arrearage current on the day of the hearing speaks to his ability to pay and to his culpability in not timely paying, and Husband can point to no evidence in the record of his inability to pay. Having considered the evidence, we are satisfied that the record supports the trial court's finding that Husband acted willfully when he disobeyed the trial court's order to pay child support on the dates and in the amounts ordered. *See Haynes v. Haynes,* 904 S.W.2d 118, 120 (Tenn. Ct. App. 1995).

IV.

Husband maintains that he was entitled to a jury trial on the contempt issue. He argues that prosecution under Tenn. Code Ann. § 36-5-104 for failure to pay child support entitles him to a jury trial under *Brown v. Latham,* 914 S.W.2d 887 (Tenn. 1996). Husband is correct in his reading of *Brown v. Latham*, and had he been prosecuted for the criminal offense set out in Tenn. Code Ann. § 36-5-104, he would have been entitled to a jury. However, the record clearly shows he was found in contempt of court under Tenn. Code Ann. §29-9-102.

Our Supreme Court recently considered the same argument presented by Husband herein. In *Ahern v. Ahern,* 15 S.W.3d 73, 82 (Tenn. 2000), the Court stated:

> In *Brown v. Latham*, this Court distinguished the contempt provisions in Tenn. Code Ann. § 29-9-102 from Tenn. Code Ann. § 36-5-104(a). *Brown*, 914 S.W.2d at 889. Tennessee Code Annotated § 36-5-104 addresses only the failure to pay child support. The punishment for violation of this statutory provision is the equivalent of punishment for committing a misdemeanor offense. *Brown*, 914 S.W.2d at 888.
>
> Unlike Tenn. Code Ann § 36-5-104(a), contempt provisions of Tenn. Code Ann. § 29-9-102 are used to vindicate the authority of the courts either by punishment or by forcing compliance. *Brown*, 914 S.W.2d at 888. The "offenses" enumerated in Tenn. Code Ann. § 29-9-102 are wilful affronts to the court and include the wilful misbehavior of an individual in the court's presence, the wilful disobedience of an individual to a court order, abuse of or unlawful interference with the court proceedings, and jury tampering. Regardless of the form of the remedy or punishment, it is the court and its administration of justice that are offended by an act of contempt.

Nothing in the record indicates that Husband was charged with or convicted of the criminal offense of failure to comply with a child support order under Tenn. Code Ann. § 36-5-104. To the contrary, the record shows: (1) The petition requested that Husband be required to show cause why he should not be held in criminal contempt for failing to pay child support as ordered; (2) an order issued for Husband to appear "to show cause why he should not be held in contempt of court for failure to pay child support as ordered by this Honorable Court;" (3) in its final order the trial court found Husband in criminal contempt. From the bench, the trial court stated:

> It is abundantly clear that Mr. Levenhagen is in contempt of this court - - willful contempt of this court. He did not pay his child support payments when he was ordered to pay them. When a court order tells you that you are to pay something at a particular time, it does not give you the option of selecting when you are going to pay; it does not give you the option of waiting to see whether a contempt action is filed against you before you do pay. And I do find him to be in willful contempt of court.

-10-

In addition, while arguing that the contempt action against Husband should be dismissed on ground not relevant to this appeal, counsel for Husband repeatedly referred to the proceeding as "a criminal contempt." The sentence imposed, ten days in jail with all but 48 hours suspended long as timely payments were made, is a sanction "traditionally utilized to vindicate the authority of the courts," rather than a punishment. *State ex rel. Richardson v. Richardson*, No 01A01-9706-CV-00274, 1998 WL 652579 at * 6 (Tenn. Ct. App. Sept 23, 1998) (no Tenn. R. App. P. 11 application filed).

In *Ahern*, the Supreme Court held that "one charged with criminal contempt under Tenn. Code Ann. § 29-9-102 is not entitled to a jury." *Ahern*, 15 S.W.3d at 82. The Court explained:

> The general rule is that a constitutional guaranty of jury trial does not apply to proceedings to punish for contempt of court whether in a court of law, a court of equity, a court having criminal jurisdiction, or other court. Punishment for contempt may be summary whether the contempt is direct or indirect, civil or criminal, whether the contempt consists in disobedience of an order of the court, insult, or in other conduct or omission, whether the acts constituting the contempt constitute also infractions of the criminal law, although of the grade of felony and whether imprisonment or fine is imposed or indemnity of an adverse party is decreed. Due process does not require a jury trial in such a proceeding.

*Id.* at 81 (quoting *Pass v. State,* 181 Tenn. 613, 184 S.W.2d 1, 3 (1944)). *Ahern* requires us to reject Husband's argument that he is entitled to a jury trial in this situation.

V.

Accordingly, we affirm the decision of the trial court in its entirety. This case is remanded for such proceedings as may be necessary. Costs of this appeal are to be taxed to Mr. Levenhagen, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

-11-