**IN THE COURT OF APPEALS OF TENNESSEE**
**MIDDLE SECTION AT NASHVILLE**

_____

| | | |
|---|---|---|
| **CARA ANNETTE HOLLIS**, | ) | |
| | ) | **Williamson Chancery No. 24097** |
| Plaintiff/Appellee | ) | |
| | ) | **Appeal No. 01A01-9704-CH-00178** |
| vs. | ) | |
| | ) | |
| **FREEMAN HARDIN HOLLIS**, | ) | |
| | ) | |
| Defendant/Appellant | ) | |

_____

APPEAL FROM THE CHANCERY COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE
THE HONORABLE HENRY DENMARK BELL, CHANCELLOR

**FILED**

**February 13, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

**CAROL L. SOLOMAN**, Nashville, Tennessee
Attorney for Defendant/Appellant

**VIRGINIA LEE STORY**, Franklin, Tennessee
Attorney for Plaintiff/Appellee

OPINION FILED:

**AFFIRMED**

**DAVID R. FARMER, J.**

**W. FRANK CRAWFORD, P.J.,W.S. (Concurs)**

**ALAN E. HIGHERS, J. (Concurs)**

This divorce case involves the dissolution of the twenty-one year marriage of Cara Annette Hollis (Wife) and Freeman Hardin Hollis (Husband). The trial court entered a final decree declaring the parties divorced pursuant to T.C.A. § 36-4-129(b).[1] Husband has appealed from the final decree, challenging the trial court's decisions regarding child custody and alimony. For reasons as hereinafter stated, we affirm.

The parties married in June, 1975. Their union produced three sons: Nathan, Timothy and Joseph who, at the time of trial (December 1996), were ages eighteen, fifteen and thirteen, respectively. Wife was forty at the time of trial and in good health. She has an eleventh grade education. Both before and after the marriage, she held various minimum wage positions (mostly in sales). She became a full-time homemaker after the birth of their first child, remaining so throughout the majority of the marriage. She periodically undertook work outside the home, such as babysitting, and the position of nanny for three years, when her children became of school age. She began her current occupation of cleaning houses in 1991. She estimates monthly earnings of $600.00. She identified total monthly expenses for herself and the children of $3,143.56. This figure includes the first and second monthly mortgage payments on the marital home, which the parties valued at $55,000.00 with an approximate equity of between $21,000.00 and $26,000.00. Wife requested that the parties share joint custody of the children, with she receiving primary physical custody. She asked to be allowed to remain in the marital home until the youngest child turns eighteen or graduates from high school.

Husband was forty-four at the time of trial. He has been a federal government employee, working as a supply technician for the Department of Defense, for approximately twenty years. He earns additional income as a member of the National Guard and supervising parties held at the Armory. Husband testified that during the marriage his employment required out-of-town travel and overnight stays "off and on." For

---

[1]**36-4-129. Stipulated grounds and/or defenses - Grant of divorce. -**
. . .
(b) The court may, upon such stipulations or upon proof, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone.

the past two years, his work has required him to be away from the home approximately two weeks out of each month. Husband stated, however, that he has since trained a new employee which will drastically reduce his out-of-town travel to only two or three nights per month. He requested that he be awarded the marital home and sole custody of both minor children. He explained that when out-of-town travel is necessary, the younger children would be supervised by their oldest brother. He and his eldest son, who attends school and works part-time, have a good relationship.

Wife stated that Husband's employment during the marriage required overnight travel "quite often." She explained that when he is "on the road," he is away from home Monday through Thursday or Friday as well as once a month for National Guard drills, when he is away the entire weekend. Wife stated that sometimes Husband would be away all night when monitoring a party held at the Armory.

Husband's 1995 federal income tax return indicates annual earnings of $40,414.00. Husband's 1996 earnings statement through September reflects compensation of $31,174.00. He receives an additional $219.00 per month for National Guard duties and approximately $1,500.00 annually for monitoring parties at the Armory.

Upon hearing the evidence, the trial court entered a final decree as follows: In addition to declaring the parties divorced, the trial court awarded the marital residence and its accompanying indebtedness to Wife and ordered her to pay her own attorney's fees and marital debt of approximately $6,000.00. Husband was awarded his pension, which the parties valued at approximately $26,500.00, and ordered to pay all remaining marital indebtedness incurred by either party prior to the hearing date, or approximately $8,000.00. Wife was awarded custody of Joseph and Husband custody of Timothy. As to custody, the court held, "[t]hat Joseph and Timothy will be together for the entire summer school vacation with Wife having visitation/custody for the first half and Husband having visitation/custody the second half. That Timothy and Joseph will also be together on all school holidays with the parties having custody/visitation on alternating holiday periods,

3

including weekends during the school year." The court ordered Husband to pay child support of $323.00 per month based on the court's findings that Husband has a gross earning capacity of "approximately $3,500.00 per month" and that Wife's gross earning capacity is "approximately $1,300.00 per month, assuming a forty hour week as a house cleaner." Husband was to continue providing health insurance for both minor children and pay two-thirds of their uncovered medical expenses. Finally, Husband was ordered to pay Wife $620.00 per month as alimony *in futuro*.

Husband identifies the issues on appeal as follows:

I.      Whether the Chancellor abused his discretion in separating the two brothers, who were close in age, without any evidence that such separation would be in the children's best interest.

II.     Whether the Chancellor abused his discretion in failing to award custody of the two minor children to the father based upon a comparative fitness analysis and the children's preference.

III.    Whether the Chancellor abused his discretion in awarding alimony *in futuro* to the wife where the wife is relatively young, in good health, and where financial rehabilitation is feasible.

IV.     Whether the husband should be awarded his attorney's fee on appeal incurred on behalf of the children.

Wife has raised the similar issue of whether she should be awarded her attorney's fees incurred in this appeal.

Husband's first two issues address the awarding of custody and will be considered together. Husband contends that the trial court erred in dividing custody of the two minor children. He asserts that the record reflects both young men's preferences to reside with their father. He also notes the undisputed acrimonious relationship currently existing between the eldest child and Wife which, according to Husband, will "severely handicap []" the youngest child's relationship with his oldest brother if the custody award is allowed to stand. Finally, Husband insists that there was no showing that the younger child's best interests are served by custodial placement with the Wife or that the best interest of either of the two minor children are served by physically separating them. It is asserted that the

4

potential damage which may result from such separation is not minimized by the court's "well-meaning gesture" requiring the two young men to spend vacations and holidays together.

Our review of the trial court's decision regarding custody is *de novo* on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *E.g.*, *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. App. 1996); Rule 13(d) T.R.A.P. The *Gaskill* court's discussion of child custody decisions merits repeating here:

> [C]ustody and visitation arrangements are among the most important decisions confronting a trial court in a divorce case. The needs of the children are paramount; while the desires of the parents are secondary. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn.1986). Custody should never be used to punish or reward the parents, *Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn.Ct.App.1995); *Long v. Long*, 488 S.W.2d 729, 733 (Tenn.Ct.App. 1972), but rather should promote children's best interests by placing them in an environment that will best serve their physical and emotional needs. *See Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn.1983).
>
> No hard and fast rules exist for determining which custody and visitation arrangement will best serve a child's need. *Taylor v. Taylor*, 849 S.W.2d 319, 327 (Tenn.1993); *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn.Ct.App. 1983). The inquiry is factually driven and requires the courts to carefully weigh numerous considerations. *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990); *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn.1988). Among these considerations are:
>
> > the age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of thirty-party support; the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.
>
> *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn.Ct.App.1983); *see also* Tenn. Code Ann. § 36-6-106(Supp.1995).

*Gaskill*, 936 S.W.2d at 630.

The record reflects that the parties have remained in the same household up until

5

the time of the divorce hearing. The record further reveals much friction among these family members once the divorce proceedings ensued, with the exception of Joseph whom it appears has remained for the most part neutral. Arguments were not uncommon and Husband recalled instances of Wife's verbal abuse toward him with the children present. There were also instances where Wife would leave the home (no longer than overnight) to go to a nearby friend's home, according to Wife, because of the stresses and pressures felt in the home during this time. Both parties confessed to extramarital affairs.

Since Wife's filing for divorce, Husband agrees that he has taken a more active role with the children and household chores and, in Wife's words, he "suddenly started doing everything." Wife testified that she had a good relationship with all of her children prior to the time she filed for divorce. Wife admitted that her relationship with her two eldest sons had since become "strained." She attributed this to Husband's attempts to "involve" the children in the divorce and "sway" their positions. She stated that Husband did not encourage the children to be respectful of both parents. Husband's testimony was to the contrary.

Timothy testified that he desired to reside with Husband. Joseph did not testify. Timothy stated that, prior to the divorce filing, Wife primarily escorted him to his various activities, but since that time, his father had played a more active role in these events. Timothy stated that during the marriage, his father "did the best he could . . . whenever he was there." Timothy acknowledged Joseph's love for his mother and agreed that they were "pretty close." Husband testified that he has a good relationship with all three of his children.

In contending that he is the better fit parent to care for his two minor sons, Husband notes Wife's absences from the home, her verbal abuse and, according to him, her "emotional inability to control her life and perform her parental obligations" at the present time. In his favor, Husband points to the fact that he has changed both his household routine and job requirements in order to best parent his children "in the face of divorce."

6

On appeal, Wife does not disagree with the trial court's divided custody award, noting that the two children will continue to reside in the same community, attend the same school system and have similar activities within the community.

The trial court's decision necessarily implies a finding that both parties are "fit" custodians since each was awarded custody of one child. The record supports this determination. As to the divided custody arrangement, Husband correctly cites to W. Walton Garrett, *Tennessee Divorce, Alimony and Child Custody* § 24-15 (1997) in proposing that "[t]here is a strong presumption that the welfare of the children will be best served by keeping the children together." This presumption, however, must be viewed in light of the particular facts and circumstances surrounding each child custody case. The record indicates that prior to the divorce proceedings, Wife was the primary caretaker of these children and that their relationships with each other were good. Upon a thorough review of the record, we find no indication that Joseph possesses any hostilities toward his mother (or father for that matter). The current custody arrangement allows Joseph to continue to reside in the home that he has always known and to be cared for by his primary caretaker. It is the hope of this court that Joseph and his mother will continue to pursue a healthy relationship. Clearly, animosity is present in Timothy's relationship with his mother. He expressed a strong desire to reside with his father and at the age of fifteen, his desires merit consideration. An award of custody of Timothy to Wife under these circumstances, we believe, quite possibly could have a detrimental effect upon the presently healthy relationship between Wife and Joseph. Timothy and his father share a healthy relationship. Husband's testimony convinces the court that his employment now requires less travel. This fact, accompanied by the fact that the eldest son continues to reside with Husband as well, leads this court to conclude that custody of Timothy was properly awarded to Husband and that such is in his best interest.

Husband's next issue concerns the award of alimony *in futuro* to Wife. He contends that the record supports a finding of Wife's ability to be economically rehabilitated. T.C.A. § 36-5-101(d) identifies various factors for the trial court to include in its consideration of

7

whether alimony, of any kind, is appropriate. Of these, the fundamental concerns are need and the ability to pay. *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. App. 1993). The record clearly establishes that Husband's earning capacity is superior to that of Wife. Granted, she is of relatively young age and healthy. However, she has spent the majority of her marriage being a homemaker and caretaker of her children, as well as others. She does not possess a high school degree or its equivalency. Her income as a housekeeper, even if employed full-time, as calculated by the trial court, is $1,300.00 per month. Her needs alone were established in excess of $2,000.00 per month. The record, too, establishes Husband's ability to pay. Husband has not argued his inability in this regard. He merely contends that an award of alimony *in futuro* is contrary to the express language of the alimony statute which requires first a showing that the economically disadvantaged spouse cannot be rehabilitated. We are satisfied that the record supports the trial court's award of alimony *in futuro* to Wife at $620.00 per month.

Both parties have requested that they be awarded their attorney's fees incurred in this appeal. Based on our decision, we deny Husband's request, but find it appropriate to grant Wife's request. The issues in this case primarily concern custody of the parties' children. We have affirmed the awarding of custody as determined by the trial court. The court in *Sherrod v. Wix*, 849 S.W.2d 780 (Tenn. App. 1992), holds that "requiring parents who precipitate custody or support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy." *Sherrod*, 849 S.W.2d at 785.

It results that the judgment of the trial court is affirmed and this cause remanded for further hearing to determine the appropriate amount of attorney's fees to be awarded Wife on appeal. Costs are assessed against the appellant, for which execution may issue, if necessary.

                                _____

                                FARMER, J.

CONCUR:

_____
CRAWFORD, P.J.W.S.


_____
HIGHERS, J.