# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## DEBRA A. BULLINGTON v. RAYMOND KEITH HUDSON

**Direct Appeal from the Juvenile Court for Davidson County**
**No. 97-11670  Betty Adams Green, Judge**

---

**No. M1999-02772-COA-R3-CV  - Decided April 26, 2000**

---

This appeal involves a father's child support obligation.  After the child's mother filed a petition to increase child support, the trial court increased the amount of child support prospectively as well as retrospectively for a period of seven years prior to the mother's petition to increase support.  The court's retrospective modification was effected by a correction of the prior support order pursuant to Tennessee Rule of Civil Procedure 60.01.  We hold that the court erred in its retroactive modification of child support as well as in its decision not to award the wife attorney fees below.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed and Remanded**

CAIN, J., delivered the opinion of the court, in which CANTRELL, P.J., M.S., and COTTRELL, J., joined.

Robert L. Jackson, Stanley A. Kweller, Nashville, Tennessee, for the appellants, Raymond Keith Hudson.

John J. Hollins, Jr., Nashville, Tennessee, for the appellee, Debra A. Bullington.

## OPINION

## I.  FACTS

Raymond Hudson ("the Father") and  Debra Bullington ("the Mother") are the parents of Christopher Ryan Bullington.  The parties are not now and have never been married.  For his entire life, Christopher has lived with the Mother.  On appeal, we review the court's most recent order involving the Father's obligation to support Christopher.

Christopher was born on February 11, 1982. In November of 1985, the Father filed a petition to legitimate Christopher after which the Mother filed an answer and counter claim to establish the Father's child support obligations. On November 25, 1987, the juvenile court entered a memorandum opinion ("the November 1987 Memo Opinion"), the provisions of which were put into effect by a February 1988 Order entered nunc pro tunc for November 25, 1987. In the November 1987 Memo Opinion, the parties stipulated that Raymond Hudson was Christopher's natural father. In addition, the court set the amount of child support arrearage at $6500, and it ordered the Father to pay $25 per week on this arrearage. The court set child support at $35 per week. Finally, the opinion provided that the Father furnish the Mother with a copy of his federal tax return each year beginning with the 1987 tax year.

In 1990, the Mother petitioned for an increase in support due to a material change of circumstances with regard to the Father's income. The Father's support obligation was increased by an agreed order entered in May of 1990 ("the May 1990 Agreed Order"). The court modified child support to $60 per week.

Several years later, in October of 1997, the Mother again petitioned for an increase in child support. She alleged that the Father's income had substantially increased since May 7, 1990. The court entered an agreed order on February 22, 1999 ("the February 1999 Agreed Order") which set child support at $787 per month and which provided that all remaining issues be reserved until the final hearing. This agreed order was entered nunc pro tunc for March 15, 1998.

At the final hearing, the Father and the Mother were the only witnesses. The Mother stated that she filed her most recent petition to increase child support when she learned that the Father had gone to work at Nissan in 1990. The Mother testified that she could not afford a lawyer so she alone met the Father in a parking lot where he showed her some papers regarding his earnings. At this time, she signed the May 1990 Agreed Order. The Mother testified "[s]o I took him at his word and I signed the papers because he told me that's what it was and that's all he was going to pay." She added that since the Father did have a lawyer, she was assuming that they were being honest with her.

The Mother testified that she received from the Father yearly from 1990 to 1996 copies of his federal income tax returns filed jointly with his wife, Belinda Hudson. The Mother testified that she never received from him any W-2 forms and thus that she never knew the amount of his personal yearly income. Entered as a trial exhibit were all of these tax forms as well as the W-2 forms. The Father's W-2 forms showed his gross income as follows: in 1991, $50,500; in 1992, $45,000; in 1993, $45,000; in 1994, $61,022; in 1995, $60,500; and in 1996, $55,000. The 1990 tax joint return filed by the Father and his wife showed total wages and salaries at $49,483; however, the attached W-2 form showed that the Father earned from Nissan $32,031.33 for the entire year of 1990.

The Mother testified that she earned approximately $40,000 per year and that it had been

difficult to support Christopher and herself over the years. On occasion, the Mother would super glue Christopher's shoes together until she could afford new ones. She rarely had cash to give him for activities. She testified that Christopher, now a seventeen-year-old sophomore, works at a grocery store. Regarding her legal expenses, the Mother testified that she had taken out a loan to pay her attorney a $2500 retainer fee to bring this support modification proceeding.

The Father testified that he was married and had been so for thirteen years to his wife with whom he had three children. He said that he had started work at Nissan in 1990 and that he had agreed to the 1990 increase in support to $85 per week. He admitted that he had not visited Christopher since he was two years old and that he had taken no action to have a relationship with Christopher. He testified that he had not sent the Wife W-2 forms because the Agreed Order had only provided that he send to her tax return forms. However, the Father admitted on cross-examination that he had sent the Mother partial tax return forms for the past years because he did not want her to know the amount of his individual income.

The final order was entered on March 16, 1999. With regard to current child support, the court left it at the agreed amount of $787 per month as per the February 1999 Agreed Order stating that this amount is within the child support guidelines. In addition, the court ordered that child support from November 1997 until this order went into effect on April 1, 1998 also be set at $787. The court found that an upward deviation was appropriate under the facts of this case due to the Father's failure to visit the child. Since such deviation was not requested until October 1997, the court ordered that it should be prospective from November 1, 1997 forward at $187 per month.

With regard to the issues now on appeal, the trial court ordered that the May 1990 Agreed Order be corrected pursuant to Tennessee Rule of Civil Procedure 60.01. The May 1990 Agreed Order had stated that the parties acknowledged that the order complied with the child support guidelines. However, the court found that the agreed upon amount of child support, $60 per week, was approximately 45% less than the amount required by the guidelines. The court reasoned that the $60 per week amount was a clerical mistake since there was no specific finding rebutting the presumption that the guideline amount was appropriate. Thus, the court corrected the May 1990 Order to reflect the guideline amount which the court set, based upon the Father's income for 1990, at $108 per week. Since 383 weeks had passed from the time that the order was entered until the filing of the Mother's petition to modify, the difference in $108 and $60 is $48 per week which amounts to an additional $18,384 due through October 3, 1997. Finally, the court ordered that each party be responsible for his and her own attorney fees.

## II. ISSUES

Though the final order effected a modification of other aspects of the parties' support agreement, the only issue on appeal regarding child support is the trial court's modification of support prior to the October 1997 Petition. The Father argues that such a retroactive increase in child support violates a state statute. In addition, he contends that Rule 60.01 is not properly used in this case to correct a clerical error of the court. We agree with the Father on both these grounds.

-3-

However, we agree with the Mother in her assertion that the trial court should have awarded her attorney fees below.

**A**.

First, with regard to the court's order being a statutory violation, the Tennessee code provides as follows:

> [An order for child support] shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.

Tenn. Code Ann. § 36-5-101(a)(5). This statute is clear in its prohibition of a modification of child support as to any time period prior to the date that an action for modification is filed and notice is given to the opposing parties. The statute makes no distinction between retroactive increases or decreases. *Brown v. Heggie*, 876 S.W.2d 98, 101 (Tenn. Ct. App. 1993); *Rutledge v. Barrett*, 802 S.W.2d 604 (Tenn.1991).

The Mother filed her petition to modify child support in October of 1997. At the hearing, the Mother's attorney stated that the Mother was "asking the Court basically for a retroactive order of child support based on just what the guidelines were." The court's order increased child support for the time period between the May 1990 Order and the October 1997 Petition. This constitutes a modification of support for 383 weeks, or 7 years, which precede the filing of the October 1997 Petition. This order clearly violates section 36-5-101(a)(5). The cases cited by the Mother do not support her contrary position. These cases involve only the modification of child support orders retroactive to the time of the filing as permitted by the statute. *See Faircloth v. Locke*, No. 01-A-019010GS00376, 1991 WL 259478, at *5 (Tenn. Ct. App. 1991) (holding that there is "no error in the general sessions court's decision to relate its order for increased support back to the date Ms. Faircloth filed her petition"); *Elkins v. Elkins*, No. 02A01-9203-CH-00061, 1992 WL 340747, at *4 (Tenn. Ct. App. 1992) (upholding the court's order increasing support retroactive to a date three weeks after the filing of a modification petition).

**B.**

In addition, we disagree with the trial court's use of Rule 60.01 as the means of retroactively modifying the May 1990 child support order. The court made the following finding:

> The order of May 7, 1990 is corrected pursuant to Rule 60, Tennessee Rules of Civil Procedure for mistake. Finding number five of this order states that "the parties acknowledge that the child support ordered pursuant to this order complies with the Federal Guidelines for child support." However, the agreed upon amount is approximately 45% less than would be required by the Guidelines. The Guidelines are not discretionary. In order to deviate from the Guidelines, the finder of fact must

-4-

make specific findings rebutting the presumption that the guidelines are appropriate. Because there is no such finding the $60.00 must be a clerical mistake.

By basing its ruling upon Rule 60, the court avoids the prohibition of Tennessee Code Annotated section 36-5-101. Furthermore, it is not an appropriate use of Rule 60.01 as this rule is interpreted by our courts.

Tennessee Rule of Civil Procedure 60.01, entitled "Clerical Mistakes," provides for relief from a final judgment under the following circumstances:

> Clerical mistakes in judgments, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

An analysis of the case law interpreting Rule 60.01 shows that the trial judge inappropriately characterized the amount of child support in the May 1990 Order as a clerical mistake. Rule 60.01 has consistently been used to provide relief from judgments flawed by mechanical errors such as a spelling mistake or the insertion of an incorrect number or letter. The supreme court has stated that "Rule 60.01 is designed to afford relief in cases in which the judgment or order, either standing alone or when viewed in connection with other portions of the record, shows facial errors arising from oversight or omission." *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 49 (Tenn. 1986) (holding that "the trial court's amendment of the employer's name in the judgment was a proper correction of a misnomer under Tennessee Rule 60.01"); *Jerkins v. McKinney*, 533 S.W.2d 275 (Tenn. 1976) (upholding the trial court's use of Rule 60.01 to correct an order in which, by oversight or omission, the trial court divested the defendant of his interest in the real estate and failed to reinvest it in anyone); *see also Hobbs v. Hobbs*, 987 S.W.2d 844, 848 (Tenn. Ct. App. 1998). This court has stated that "[t]he words 'clerical mistake' do not particularly apply to every act of a person denominated a 'clerk.' Rather [they apply] to mechanical errors of computation or copying by any person, Clerk or otherwise." *Zeitlin v. Zeitlin*, 544 S.W.2d 103, 108 (Tenn. Ct. App. 1976).

In the instant case, there is no proof that the agreed upon amount set out in the May 1990 Order is a clerical error arising from oversight or omission. Indeed, there is no proof that on date of the entry of the May 7, 1990 Agreed Order, the Father's salary or wages would have entitled the Mother to an award of child support greater than $60 per week. The only proof proffered by the Mother involved the amount of the Father's earnings for the year 1990 – there is no testimony or evidence otherwise as to when he received the wages that were set out in his W-2 form. All we have here is speculation by the trial judge that there was a clerical mistake based on the evidence that the Father's total wages for the year, if annualized, would have required a different child support amount.

In her appellate brief, the Mother shifts the focus of her appellate argument to allegations that the Father's defrauded the court by providing incorrect information regarding his finances prior to the May 1990 Order. While Rule 60.02 does provide relief from judgments or orders on the ground of fraud, a Rule 60 motion for relief based upon fraud must be made not more than one year after the judgment, order or proceeding is entered or taken. This is simply not a timely argument.

## C.

In the final issue, the Mother contends that the court erred in failing to award her attorney fees. The trial court ordered that each party be responsible for his and her own attorney fees. Tennessee Code Annotated § 36-5-103(c) provides as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

As a result of § 36-5-103(c), "the Tennessee Supreme Court has noted that awards for legal expenses in custody or support proceedings are 'familiar and almost commonplace.'" *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App.1992) (*quoting Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn.1989)).

We believe that, under the circumstances of this case, an award to the Mother of fees incurred at trial is appropriate. Awards of legal expenses in support proceedings "are not primarily for the benefit of the custodial parent but rather to facilitate a child's access to the courts." *Sherrod*, 849 S.W.2d at 784 (*citing Graham v. Graham*, 140 Tenn. 328, 334-35, 204 S.W. 987, 989 (1918)). The Mother was successful in the trial court in increasing support for the child. The portion of the trial court's ruling which was not appealed resulted in a prospective increase in support from $240 per month to $787 per month based upon an increase in the Father's income alone. The trial court awarded an additional $187 per month to the Mother as an upward deviation based upon the Father's failure to visit the child. Thus, the Mother's petition to modify support engendered a great financial benefit to the child.

This court has stated that the parties' ability to pay for the legal expenses in custody or support proceedings is certainly a factor to be considered in awarding attorney fees. *Sherrod*, 849 S.W.2d at 785. In this case, the Mother's testimony was that she struggled financially to provide for the child. She sought an increase in child support at her own financial risk by securing a loan to pay her attorney a $2500 retainer fee to bring this action to modify support. Finally, though we have held that there is no legal basis for the modification of child support prior to the October 1997 petition, the fact is that the evidence shows that the Father was paying far below the guideline child support

amount for many years before the 1997 petition was filed.

On remand, the trial court will determine the appropriate and reasonable amount of attorney fees to be awarded to the Mother.  However, we find that the Mother is not entitled to fees on appeal as she has not prevailed on the primary issue before this appellate court, to wit, the accuracy of the lower court's award of retroactive child support.

### III. CONCLUSION

In conclusion, we hold that the trial court erred in holding that the May 1990 Agreed Order be corrected pursuant to Rule 60.01.  First, the trial court's order amounted to a retroactive modification of support in violation of Tennessee Code Annotated section 36-5-101(a)(5).  Second, to modify the earlier order, the trial court incorrectly used Tennessee Rule of Civil Procedure 60.01 as this was clearly not a clerical error.  While we deny the Mother attorney fees on appeal, we do find that she should have been awarded her attorney fees below, and we remand this case for a determination of said fees.  Costs on appeal shall be divided equally between the parties.

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## DEBRA A. BULLINGTON v. RAYMOND KEITH HUDSON

**Juvenile Court for Davidson County**
**No. 97-11670**

---

**No. M1999-02772-COA-R3-CV**

---

**JUDGMENT**

This cause coming on to be heard upon the record on appeal from the Juvenile Court for Davidson County, argument of counsel and briefs; upon consideration whereof, this Court is of opinion that in the judgment of the trial court there is reversible error.

In accordance with the opinion of the Court filed herein, it is, therefore, ordered and adjudged by this Court that the judgment of the trial court is reversed. The cause is remanded to the Juvenile Court for Davidson county for further proceedings in accordance with the opinion filed herein and for the collection of the costs accrued below.

Costs of this appeal are divided equally between the parties, Debra Bullington and Raymond Hudson, for which execution may issue if necessary.