# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned On Briefs June 2, 2016

## IN RE: LUKAS S.-M.

### Direct Appeal from the Juvenile Court for Putnam County
No. 5665    Steven D. Qualls, Judge

---

### No. M2015-01367-COA-R3-JV – Filed June 30, 2016

---

This is an appeal from an order designating a primary residential parent, setting visitation, and requiring the child to be returned to Tennessee. The juvenile court found that Mother failed to comply with Tennessee's parental relocation statute, and after conducting a best interest analysis, ordered that the child be returned to Tennessee. Mother appealed both the court's application of the relocation statute and its determination of the child's best interests. We vacate in part and affirm in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated in part, Affirmed in part, and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Elizabeth Ann Shipley, Cookeville, Tennessee, for the appellant, Natalie S.

Robert Steven Randolph, Algood, Tennessee, for the appellee, Deven M.

### OPINION

### Background & Procedure

The parties, Devin M. ("Father") and Natalie S. ("Mother"), are the parents[1] of the child, Lukas S.-M. ("the Child"),[2] who was born on April 2014, out of wedlock. At

---

[1] Although not made part of the record, Father's paternity was apparently established on April 17, 2014, as noted by the juvenile court's order setting support.

[2] In cases involving a minor child, it is this Court's policy to redact names in order to protect the child's identity. In this case, in order to preserve both clarity and the anonymity of the child, we will redact the names of individuals sharing the child's surname and will refer to those individuals by their given name and the first letter of their surname.

the time of the Child's birth, the parties were no longer in a relationship.  On June 4, 2014, Mother filed a petition in the juvenile court of Putnam County to set support.  On July 9, 2014, the juvenile court entered an order setting Father's child support obligation but did not address visitation.  At the time, the parties made arrangements for visitation by agreement.

Mother took the Child to Minnesota, where Mother has family, for an extended visit in August 2014 and, in October 2014, advised Father by text message that she and the child would not be returning to Tennessee.  On December 8, 2014, Father filed a petition for equal visitation and alleged that Mother had violated the parental relocation laws set forth in Tennessee Code Annotated section 36-6-108.  Subsequently, on February 20, 2015, Father filed a motion to compel the return of the Child to Tennessee.  Then, on March 17, 2015, because Mother had attempted to have a Minnesota court exercise jurisdiction over the Child, the juvenile court entered an order finding that Tennessee was the home state of the Child as defined in the Uniform Child Custody Jurisdiction and Enforcement Act[3] and that it was the proper court to accept jurisdiction in this case.

After a hearing on March 26, 2015, the juvenile court entered a temporary order finding that Tennessee Code Annotated section 36-6-108 applied to this case and that Mother did not comply with the procedures set forth in that statute.  Additionally, the court noted that it considered Mother's testimony with respect to concerns that caused her to move to Minnesota but ultimately found that her concerns "did not justify her move and violation of T.C.A. § 36-6-108."  Despite the fact that the court found that Mother had violated the relocation statute, it determined that "it would be impossible . . . at this time" to grant Father's motion compelling the return of the Child due to Mother no longer having a place to live nor a source of income to support herself in Tennessee.  The court also granted Father four days of visitation in April, as well as an additional visitation period from May 31-June 2, 2015, which were to take place in Putnam County. Finally, the court instructed Mother to file her answer to Father's petition and noted that while it had not made any ruling regarding the primary residential parent, that "which party is living in Tennessee may be a factor that the Court considers at the final hearing." On June 2, 2015, Mother filed an answer and counter petition, requesting that the juvenile court award her primary residential parent status and allow the Child to remain in Minnesota.  The juvenile court conducted the final hearing in this matter on June 3, 2015 and heard testimony from both parties.  Just prior to the hearing, the juvenile court

---

[3]"'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, "home state" means the state in which the child lived from birth with any of the persons mentioned.  A period of temporary absence of any of the mentioned persons is part of the period."  Tenn. Code Ann. § 36-6-205(7).

2

sustained Father's objection to any other witnesses, besides the parties themselves, being allowed to testify due to the fact that neither party "made a proper and timely disclosure of their witnesses according to the local rules." The court also limited testimony in the final hearing to "new evidence" not presented during the March 26, 2015 hearing.

On June 18, 2015, the juvenile court entered a final order in this matter, noting that it had previously found Mother to be in violation of the parental relocation statute and that "[i]f Mother had followed the statute and the hearing was held sooner, Mother would not have placed herself in the hardship that today's decision may now cause her." The court then considered the fifteen factors set forth in Tennessee Code Annotated section 36-6-106 and the best interests of the Child in fashioning its parenting plan. Based on those factors, the court found:

> a. The proof shows that mother was the primary residential parent prior to her leaving Tennessee and moving to Minnesota.
>
> b. Mother's move with the child to Minnesota caused her to have a stronger bond and relationship with the child. However, this was due to mother's actions and should not be held against father.
>
> c. Father has made substantial efforts to be a part of his son's life. He has had to save money to hire an attorney and bring legal action in an effort to assert his parental rights.
>
> d. The Court believes that both parents are able to provide the child with the necessary food, clothing, medical care, education, and other necessary care.
>
> e. The Court finds that both parents are good parents and they both have a good relationship with their son. The Court further finds that both parents love their child and the child shows that same love and affection for each of them.
>
> f. The Court finds that the moral, physical, mental, and emotional fitness of each parent as it relates to their ability to parent the child is appropriate.
>
> . . . .
> i. The Child was born in Putnam County, Tennessee and was living here until mother decided to move to Minnesota.

j.      There was no evidence or concern by the Court regarding physical or emotional abuse of the child.

k.      The Court is not concerned with the character or behaviors of other individuals that reside in or frequent the home of either parent.

l.      This child is too young to state a preference.

m.      The Court has fashioned a visitation schedule that considers the employment schedule of father.  Mother will need to obtain employment upon her return to Putnam County, Tennessee.

n.      The Court finds that the economics and financial ability of both parties would prohibit regular and consistent visits with the child if mother remained in Minnesota and father remained in Tennessee.  This would be a fourteen (14) hour drive and this distance severely limits visitation opportunities.

o.      The Court finds that it is in the best interest of this child to remain in Putnam County, Tennessee so that he can have a regular and frequent visitation schedule with his father.  Mother placed herself in her current position.  Her aunts, uncles, cousins, etc. can remain her support system from a distance and the best interests of the child take priority over what mother believes is in her best interests.

The court then ordered that the Child be returned to Putnam County, Tennessee on or before August 12, 2015 and entered a permanent parenting plan naming Mother the primary residential parent.  The parenting plan awarded Mother and Father 201.5 and 163.5 days with the Child, respectively.  Mother filed a notice of appeal on June 18, 2015.

**Issues**

Mother raises the following issues on appeal:

I.      Whether the trial court erred in finding that the Relocation Statute applied and if so, whether the statute was applied correctly.

II.      Whether the trial court erred in its analysis of the best interest of the child.

Father raises two additional issues, which we have reworded slightly:

4

III.     Whether the record is incomplete, and if so whether this Court is precluded from hearing the issues on appeal.

IV.     Whether Mother's brief complies with the Tennessee Rules of Appellate Procedure, and if not whether her appeal should be dismissed.

## Standard of Review

The Tennessee Supreme Court recently described in detail the standard of review that applies when an appellate court reviews a trial court's decision on a parenting arrangement:

> In a non-jury case such as this one, appellate courts review the trial court's factual findings *de novo* upon the record, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. See Tenn. R. App. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 792 (Tenn. 2013). We review the trial court's resolution of questions of law *de novo* with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d at 692.

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Armbrister v. Armbrister*, 414 S.W.3d at 693. Determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Armbrister v. Armbrister*, 414 S.W.3d at 693 (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Armbrister v. Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)).

> A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Armbrister v. Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d at 88). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Banks*, 271

5

S.W.3d 90, 116 (Tenn. 2008) (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Armbrister v. Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge*, 42 S.W.3d at 88).

*Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014). With these principles in mind, we turn to the substance of this appeal.

## Analysis

### A. Applicability of the Relocation Statute

We first address Mother's assertion that the juvenile court erred in finding that the Relocation Statute, Tennessee Code Annotated section 36-6-108, applied in this case. "In a series of cases beginning with *Gregory v. Gregory*, W2002-01049-COA-R3-CV, 2003 WL 21729431 (Tenn. Ct. App. July 14, 2003) (no Tenn. R. App. P. 11 app. filed), this court has held that the standards in the Relocation Statute should not be applied when the court is making the initial custody decision or parenting arrangement." *Nasgovitz v. Nasgovitz*, M2010-02606-COA-R3-CV, 2012 WL 2445076 at *5 (Tenn. Ct. App. June 27, 2012). Rather, in an initial custody decision, the trial court must "consider what is in the child's best interests" as provided in Tennessee Code Annotated section 36-6-106. *Rudd v. Rudd*, W2009-00251-COA-R3-CV, 2009 WL 4642582, at *6 (Tenn. Ct. App. Dec. 9, 2009) (affirming trial court's use of general custody and visitation statute instead of Relocation Statute in ordering initial permanent parenting plan). Because the final hearing in this case was for an initial custody determination and no permanent parenting plan previously existed, the Relocation Statute does not apply. Accordingly, we vacate the juvenile court's finding with respect to the Relocation Statute.

In his brief, Father concedes that the Relocation Statute does not apply but argues that its application did not affect the outcome of this case. In *Graham v. Vaughn*, M2012-01982-COA-R3-CV, 2014 WL 356975 (Tenn. Ct. App. Jan. 30, 2014), this Court addressed a similar issue. In that case, the father of a nine year old girl filed a petition seeking to legitimate the child, requesting that he be named primary residential parent, and asking that the mother be prevented from moving to Florida with the child. *Id.* at *1. In her answer, the mother, having already moved, asked to be allowed to remain in Florida with the child. *Id.* The trial court, in making its initial custody determination, applied the Relocation Statute, determined that there was no reasonable purpose for the mother's proposed relocation and that the move was not in the child's best interest, and

ordered that the child be returned to Tennessee. *Id.* On appeal, this Court determined that "[n]otwithstanding the fact that the parental relocation statute does not apply in this proceeding, it was appropriate for the court to consider Mother's plan to remain in Florida as the court designated the primary residential parent and adopted the parenting plan." *Id.* at \*2. Further, we noted that although the trial court applied the incorrect statute, that it nevertheless "used the correct standard—best interest of the child." *Id.* (citing *Nasgovitz*, 2012 WL 2445076 at \*7. After determining that the evidence in that case did not preponderate against the trial court's findings of fact, we affirmed the court's requirement that the child be returned to Tennessee. *Graham*, 2014 WL 356975 at \*3.

Here, although the juvenile court incorrectly applied the Relocation Statute, it determined that "it would be impossible" to grant Father's motion to compel the return of the Child prior to the final hearing due to Mother's living and employment circumstances. The court then noted in the March 26, 2015 order that "which party was living in Tennessee may be a factor that [it would consider] at the final hearing." In the juvenile court's June 18, 2015 final order, the court found that it was in the Child's best interest to remain in Tennessee in order to have regular and frequent visitation with Father. Therefore, although the Relocation Statute does not apply in this case, the juvenile court applied the correct standard—best interest of the child—in its determination that the Child should remain in Tennessee. The correctness of that determination, however, is also at issue in this case.

## B. Best Interests of the Child

Mother also asserts that the juvenile court neglected to take into account a number of factors relevant to the "best interest of the child" analysis and, therefore, that the court's parenting plan determination was not in the Child's best interests. However, we must first consider Father's argument that this Court is precluded from considering the issue based on his assertion that Mother failed to provide an adequate appellate record and that Mother's brief does not comply with the Rules of Appellate Procedure.[4] Our review of the record indicates that a substantial portion of the transcript of the March 26, 2015 hearing, in which the juvenile court considered whether Mother violated the Relocation Statute, is missing. The transcript, which was admitted as an exhibit in the final hearing, begins *in media res* with Father's cross-examination, ends before the hearing concludes, and contains no record of the juvenile court's decision. Noticeably absent from the transcript is the entirety of Mother's testimony. Further, the notary

---

[4]Mother argues in her reply brief that it was incumbent on Father to question the completeness of the record by filing an objection with the trial court within fifteen days after service of notice of the filing of the transcript. *See* Tenn. R. App. P. 24(b). However, Father's duty under Rule 24(b) does not extend to ensuring that the record prepared by Mother meets the minimum requirements to support Mother's argument on appeal.

public's statement of certification portentously refers to "portions" of the hearing, rather than to the full hearing. Because the trial court only heard testimony from events taking place after March 26, 2015 in the final hearing, a full transcript of that prior hearing is necessary to undertake a review of the juvenile court's best interest analysis. The missing record is exacerbated by the fact that the vast majority of Mother's factual statements in her appellate brief are absent from the record outside of Mother's pleadings.

Tennessee Rules of Appellate Procedure 24(b) and (c) provide guidelines regarding an appellant's responsibilities concerning the appellate record, stating in relevant part:

> **(b) Transcript of Stenographic or Other Substantially Verbatim Recording of Evidence or Proceedings**. . . . If a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence of proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.
>
> **(c) Statement of the Evidence When No Report, Recital, or Transcript is Available.** If no stenographic report, substantially verbatim recital or transcript of the evidence or proceeding is available, . . . the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.

Tenn. R. App. P. 24(b) & (c).

"This Court's authority to review a trial court's decision is limited to those issues for which an adequate legal record has been preserved." *Taylor v. Allstate Ins. Co.*, 158 S.W.3d 929, 931 (Tenn. Ct. App. 2004). Further, "[t]he appellant has the primary responsibility to prepare a factual record containing a full, accurate and complete account of the evidence presented at trial." *In re SLD*, E2005-01330-COA-R3-PT, 2006 WL 1085545 at *4 (Tenn. Ct. App. April 26, 2006); *see also* Tenn. R. App. 24(b). In *Sherrod v. Wix*, 849 S.W.2d 780 (Tenn. Ct. App. 1992), involving a divorce and child custody, the mother was awarded custody of the parties' minor son. The father sought custody of him, challenging the trial court's alteration of his visitation schedule. However, the Court did not receive a transcript of the trial court proceedings and stated that:

> Our ability to deal with the issue is hampered by the absence of either a

transcript of the proceedings in the trial court or a statement of the evidence prepared in accordance with Tenn. R. App. P. 24(c).

When a trial court decides a case without a jury, its findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn. R. App. 13(d). This court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings. *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1987); *Gotten v. Gotten*, 748 S.W.2d 430, 432 (Tenn. Ct. App. 1988).

*Sherrod*, 849 S.W.2d at 783. Similarly, in *State v. Ballard*, 855 S.W.2d 557, 560–561 (Tenn. 1993), the Supreme Court of Tennessee stated that "[a]bsent the necessary relevant material in the record an appellate court cannot consider the merits of an issue."

Here, the portion of the record available to us demonstrates that the juvenile court heard testimony relevant to the issue on appeal in this case during the March 26, 2015 hearing. Further, the court limited testimony in the final hearing to testimony not presented during the previous hearing. As in *Sherrod*, "[o]ur ability to deal with the issue is hampered" by the absence of a full March 26, 2015 transcript. In the event that no full transcript was available, it was incumbent on Mother to prepare a statement conveying a "fair, accurate and complete account of what transpired" in accordance with Rule 24 of the Tennessee Rules of Appellate Procedure. Because no such account is available, we "must assume that the record . . . contained sufficient evidence to support the trial court's factual findings." *Sherrod*, 849 S.W.2d at 783. Accordingly, the judgment of the trial court with respect to the parenting plan and the Child's best interests must be affirmed.

## Conclusion

For the foregoing reasons, the judgment of the juvenile court is vacated in part and affirmed in part. Costs of this appeal are taxed one half to the appellee, Devin M., and one half to the appellant, Natalie S., and her surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE