IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 4, 2022

## CHRISTINA ANN STANDLEY v. CARL ANTHONY STANDLEY

Appeal from the Chancery Court for Williamson County
No. 94CH1-2013CV-42725     Deanna B. Johnson, Judge
_____

## No. M2021-00591-COA-R3-CV
_____

In this post-divorce action, Mother appeals the trial court's award of Father's attorney's fees on his petition to modify child custody. Because the trial court did not abuse its discretion in awarding Father attorney's fees, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

C. Diane Crosier and Hannah N. Roman, Franklin, Tennessee, for the appellant, Christina Ann Corey.

Bert W. McCarter, Murfreesboro, Tennessee, for the appellee, Carl Anthony Standley.

## OPINION

### I. Background

Although the procedural history of this case is lengthy, the issue presented in this appeal is narrow. In the interest of judicial economy, we will discuss only those facts and proceedings that are relevant to this appeal. On December 4, 2014, the Williamson County Chancery Court ("trial court") entered a final decree of divorce between Appellant Christina Ann Corey ("Mother") and Appellee Carl Anthony Standley ("Father"). The final decree of divorce incorporated a permanent parenting plan (the "original parenting

plan") for the parties' three minor children, Claire (d/o/b February 2008), Carl (d/o/b October 2009), and Caitlin (d/o/b February 2012) (together, the "Children"). Under the original parenting plan, Mother was awarded: (1) the majority of parenting time with the Children; (2) the primary residential parent designation; and (3) tie-breaker authority over major decisions concerning the Children. Father's child support obligation was set at $511.00 per month.

On August 17, 2016, Mother filed petitions for civil contempt and for enforcement of the original parenting plan. Mother asked for an order allowing her to use the designated "education funds" for the Children's private school tuition and to find Father in contempt until he complied with such order. On September 23, 2016, Father filed an answer to the petition for civil contempt and for enforcement along with a counter-petition to modify the parenting plan. In his counter-petition, Father asked the trial court to modify the original parenting plan, *inter alia*, to limit Mother's and Father's interactions with each other and to increase Father's overnight visits with the Children. On October 6, 2016, the trial court entered an order on Mother's petition concerning the use of educational funds, but Father's counter-petition remained pending. On December 6, 2016, Mother filed a response to Father's counter-petition. On April 18, 2017, she filed an amended petition for civil contempt, enforcement, and modification of the parenting plan. In pertinent part, Mother alleged that there had been a significant change in the parties' respective incomes and requested that the trial court increase Father's child support obligation.

On October 22, 2018, Father filed a petition to change custody and verified petition for ex parte order of custody on suspicion that Mother was abusing alcohol, which he asserted posed a substantial risk of harm to the Children. In response, Mother admitted that she had "concerns about developing issues with alcohol usage, and alcoholism . . . [and] voluntarily checked herself into a rehabilitation center for alcohol dependency while sober." Mother attended inpatient treatment from October 17, 2018 through October 24, 2018. She was scheduled to receive six weeks of intensive outpatient treatment beginning October 25, 2018. Father's petition to change custody and verified petition for ex parte order of custody was denied on October 25, 2018. On October 29, 2018, Father filed a motion for possession of minor children pending trial. The trial court heard this motion on November 30, 2018. Although the trial court took Father's motion under advisement, it: (1) prohibited Mother from consuming alcohol or any non-prescription drugs; (2) required Mother to activate a Soberlink device;[1] (3) required Mother to maintain an interlock device on her vehicle and her husband's vehicle;[2] (4) required Mother to continue receiving the

_____

[1] A Soberlink device is a breathalyzer that monitors an individual's alcohol consumption. An individual is scheduled for tests at certain times and when they breathe into the device at the scheduled test time, the breathalyzer determines if he or she has consumed alcohol prior to taking the same. *FAQs*, SOBERLINK.COM, https://www.soberlink.com/faqs (last visited April 5, 2022).

[2] "[A]n interlock device is an in-car breathalyzer that prevents a user from starting a vehicle until a breath alcohol test is taken" and passed. *What is an Interlock Device-Everything to Know*, LIFESAFER.COM, https://www.lifesafer.com/what-is-an-ignition-interlock/ (last visited April 5, 2022).

Vivitrol shot in accordance with her outpatient treatment program and to continue her outpatient treatment;[3] and (5) required Mother to continue counseling. At that time, the trial court did not modify Mother's parenting time with the Children.

On January 9, 2019, the trial court conducted a review hearing where it was provided with Mother's Soberlink test results, which indicated that Mother missed a test on New Year's Eve. Based on Mother's attestation, Mother's attorney argued to the trial court that Mother missed the test because she was asleep, not because she consumed alcohol. At this hearing, the trial court set another status hearing for February 6, 2019. At the February 6, 2019 hearing, believing that Mother had maintained her sobriety, the trial court ordered that she could remove the interlock device from her vehicles and discontinue use of the Soberlink device. Mother was still prohibited from consuming alcohol.

On March 15, 2019, Father filed an emergency motion for ex parte restraining order ("emergency motion"). In the emergency motion, Father alleged that there had been a material and substantial change in circumstances that justified immediately changing the custodial parent designation from Mother to Father, and that such change was in the Children's best interests. Specifically, Father alleged that Mother failed to maintain her sobriety and had placed the Children in danger of irreparable harm. That day, the trial court entered a restraining order that prohibited Mother from being around Father or the Children until further order of the court. On March 16, 2019, Mother entered an inpatient treatment facility. On April 23, 2019, Father filed a motion for attorney's fees, asking for an award of attorney's fees he had incurred "related to emergency filings based on Mother's alcohol abuse."

On April 30, 2019, the trial court heard Father's emergency motion. Several witnesses testified during this hearing. At that time, it was revealed that Mother missed her Soblerlink test on New Year's Eve because she had consumed alcohol, not because she fell asleep (as she asserted and allowed her attorney to state at the January 9, 2019 review hearing). It was also revealed that Mother consumed alcohol on other occasions in violation of the trial court's orders. For example, Mother consumed alcohol on February 27, 2019, a mere three weeks after Mother appeared in court to ask for removal of the Soberlink and interlock restrictions because she was allegedly sober. Although there is no need to discuss the details here, the trial court heard other troubling evidence involving Mother's alcohol consumption, her behavior, and how she endangered the Children's physical and emotional well-being. Before the hearing concluded, the parties announced an agreement in open court and on the record concerning certain issues, including that: (1) Father would be named the primary residential parent; (2) Mother's parenting time would be reduced; (3) Mother would wear a SCRAM device for the purpose of alcohol

---

[3] Vivitrol is a prescription injectable medicine used to treat alcohol dependence. *Alcohol Dependence*, VIVITROL.COM, https://www.vivitrol.com/alcohol-dependence (last visited April 5, 2022).

monitoring;[4] (5) for 90 days, Mother's husband or Mother's mother would be present during Mother's parenting time; (6) after the 90 days, the parties would share equal parenting time; (7) Mother would be required to submit to random drug tests, PEth tests,[5] and urine screens; and (8) Mother would no longer serve as the tie-breaker for major decisions, rather, the parties would make these decisions jointly. The parties specifically reserved the issue of child support and attorney's fees.

Despite announcing an agreement in open court on April 30, 2019, the parties failed to agree on a written order encapsulating the agreement. As such, on November 8, 2019, the trial court entered its own order on the April 30th hearing. The trial court affirmed the parties' agreement and also found that a material change in circumstances had occurred and that it was in the Children's best interest for custody and the parenting schedule to be modified. On December 6, 2019, Mother filed a motion to alter or amend the trial court's November 8th order. In her motion, Mother alleged "that circumstances ha[d] changed since the agreement reached in [open court]." Later, on February 12, 2020, Mother filed a notice of her intent to strike this motion.

Also, on February 12, 2020, the trial court held a hearing concerning attorney's fees, uncovered medical expenses, child support, and extracurricular activities. On February 24, 2020, the trial court entered an order that, in pertinent part, awarded Father attorney's fees from February 1, 2019 through February 3, 2020. The order also discussed the parties' respective incomes for the purpose of calculating child support, but the trial court did not modify Father's child support obligation at that time. On March 19, 2020, Father's attorney, Bert McCarter, filed an affidavit of attorney's fees, along with a billing statement totaling $36,448.00 for services rendered between February 1, 2019 and March 16, 2020. On March 26, 2020, the trial court ordered Mother to pay Father $36,448.00.

On December 20, 2020, Mother filed a motion to set all pending matters for a final

---

[4] According to SCRAMSystems.com, a SCRAM device is

[l]ike a breathalyzer for the ankle, . . . [it] provides 24/7 transdermal alcohol testing for hardcore drunk drivers, high-risk alcohol and domestic violence caseloads. By automatically sampling the wearer's perspiration every 30 minutes, the SCRAM CAM bracelet eliminates testing gaps and encourages accountability. SCRAM CAM not only supports sobriety but also results in higher compliance rates with court orders and increases community safety.

*Continuous Alcohol Monitoring*, SCRAMSYSTEMS.COM, https://www.scramsystems.com/monitoring/scram-continuous-alcohol-monitoring/ (last visited April 5, 2022).
[5] A PEth test is able to detect biomarkers for alcohol that remain in a person's blood stream for up to three weeks after consumption. Such tests are often used to detect binge drinking or chronic alcohol use. *What is PEth Alcohol Testing?*, AUSTINMOBILEDRUGTESTING.COM, https://austinmobiledrugtesting.com/services/peth-test/ (last visited April 5, 2022).

hearing, which the trial court conducted on February 12, 2021.[6]  During this hearing, the trial court worked with counsel for both parties to finalize the new parenting plan in substantial accordance with the parties' previous agreement.  The trial court and counsel also spent much of the hearing calculating Father's child support obligation and arrearage.  The trial court orally ruled that Father: (1) would be given tie-breaker authority over major decisions; and (2) was in arrears $9,198.00.  The trial court awarded Mother a judgment against Father for the arrearage.  On March 30, 2021, Mother filed a motion to reconsider, arguing that Father was $13,286.00 in arrears and asking the trial court to reconsider its decision to award Father tie-breaker authority over major decisions concerning the Children.

On April 7, 2021, the trial court entered a written order from the February 12, 2021 hearing and a new parenting plan.  The new parenting plan included Father's increased child support obligation of $776.00 per month.  The trial court heard Mother's motion to reconsider on April 27, 2021.  By order of April 30, 2021, the trial court granted Mother's motion on Father's arrears and awarded her $13,286.00 against Father, which amount would be offset by the $36,448.00 attorney's fee judgment Father was awarded against Mother.  The trial court denied Mother's request to remove the tie-breaker provision as to joint decision making.  Mother appeals.

## II. Issues

Mother raises two issues on appeal, which we restate as follows:

1. Whether the trial court abused its discretion by awarding Father all of his attorney's fees incurred from February 2019 through March 2020.

2. Whether this Court should award Mother her attorney's fees incurred in bringing this appeal.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise."  ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)).  The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness."  ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

---

[6] The appellate record contains only one transcript of evidence.  Although this transcript reflects that it is for a hearing that occurred on February 14, 2020, we deduce that the transcript was taken at the final hearing on February 12, 2021.

## IV. Analysis

Although the language in Tennessee Code Annotated section 36-5-103(c) has changed over the years, the principle behind it remains: in an action to enforce or modify a decree of alimony, child support, or a permanent parenting plan, or in an action to adjudicate or modify child custody, a court may, in its discretion, award the prevailing party reasonable attorney's fees incurred in pursuing such actions. Tenn. Code Ann. § 36-5-103(c). This Court will uphold an award of attorney's fees unless the trial court abuses its discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citing *Kline v. Eyrich*, 69 S.W.3d 197, 203 (Tenn. 2002); *Shamblin v. Sylvester*, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009)). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Wright*, 337 S.W.3d at 176 (quoting *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

### A. Father's Attorney's Fees at Trial

Mother admits that Father prevailed on his petition to modify child custody because he was named the primary residential parent and was awarded equal parenting time. As discussed, *supra*, Father was also awarded tie-breaker authority over major decisions concerning the Children. Mother acknowledges that Father "incurred a significant portion of his attorney's fees between February 2019 and April 2019, and she [does not] challeng[e] the award of fees incurred as a result of her drinking." Mother also does not challenge the "reasonableness of Father's attorney's fees[;] rather, she is appealing the [trial court's] decision to award Father all [of] his fees . . . ." From our review of her arguments, Mother alleges that the trial court's award of all of Father's fees incurred from May 2019 through March 2020 was an abuse of discretion insofar as the trial court failed to consider the fact that Mother prevailed on her petition to modify child support.

Concerning the award of attorney's fees, by order of February 24, 2020, the trial court found, in relevant part:

> Both parties request attorneys' fees and both parties claim the other is at fault for the extensive litigation in this case. It is clear to this [c]ourt that the majority of this litigation was caused by Mother's poor choices and decision to consume alcohol. Mother claims that much of the litigation occurring between the April 30, 2019 hearing and December 2019 were Mother's attempts to get an Agreed Order completed, signed, and entered. However, there is no evidence in the record to support that claim. Moreover, Mother has absolutely no credibility with this [c]ourt as a result of her lying to the [c]ourt and allowing her attorney to perpetuate that lie regarding her failure to take the alcohol test on December 31, 2018. Father has indicated to the

- 6 -

[c]ourt that it was Mother's unreasonable requests and her behavior that caused the substantial delay in the *Order* being entered. Based on Mother's prior conduct and lying to the [c]ourt and [to] her attorney, the [c]ourt credits Father's version of the events causing the delay. Accordingly, the [c]ourt finds that Mother shall pay Father's fees and expenses incurred for the work done by [] Bert McCarter and his law firm.

As an initial matter, we note that this Court is "required to defer to the trial court's credibility findings . . . ." ***Williams v. City of Burns***, 465 S.W.3d 96, 120 (Tenn. 2015); *see also* ***Street v. Street***, No. E2016-00531-COA-R3-CV, 2017 WL 1177034, at \*7 (Tenn. Ct. App. Mar. 29, 2017). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." ***Wells v. Tennessee Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999). Here, there is no question that Mother lied to the trial court concerning her alcohol use. This fact is sufficient to support the trial court's finding that Mother was not a credible witness.

Aside from the credibility finding, there is ample evidence in the record to support the trial court's award of Father's attorney's fees. Mother's alcohol abuse precipitated the litigation that began in October 2018. Mother also caused delay in the entry of an order on the April 30, 2019 hearing because, despite the parties' mutual announcement that they had reached agreement, Mother continued to challenge the agreement in the ensuing months. As discussed above, on December 6, 2019, Mother filed a motion to alter or amend the trial court's November 8, 2019 order, alleging "that circumstances ha[d] changed since the agreement reached in [open court]." In short, Mother no longer assented to the parties' agreement and asked the trial court to amend its November 8, 2019 order, thus continuing the child custody modification issue. A few months later, on February 12, 2020, Mother withdrew her motion to alter or amend; thus, settling Mother's issues with the trial court's November 8, 2019 order. Nevertheless, the record shows that the issue of child custody was not fully resolved until April *2021* when the trial court denied Mother's motion to reconsider Father's tie-breaker authority over major decisions concerning the Children. So, although the litigation on child custody continued well beyond March 2020, the trial court awarded Father his attorney's fees through March 2020 only. Because March 2020 marked the end of the substantive litigation over child custody and Father's request for attorney's fees, we conclude that the trial court's award of Father's fees through March 2020 was not an abuse of its discretion under Tennessee Code Annotated section 36-5-103(c).

Nonetheless, Mother argues that the trial court abused its discretion because it "did not consider the fact that Mother was successful as to her petition to modify child support in reaching its decision to award Father all of his fees." Mother relies on this Court's opinion in ***Richardson v. Spanos***, 189 S.W.3d 720 (Tenn. Ct. App. 2005) to support her argument. Specifically, she alleges that the trial court should not have awarded Father all of his attorney's fees because, similar to the parties in ***Richardson***, "neither party in this case prevailed on every issue." In ***Richardson***, we affirmed the trial court's denial of

attorney's fees to both parties and explained that "[u]nder the facts of th[e] case, we d[id] not disagree with the trial court's decision to require the parties to be responsible for their own legal expenses." *Id.* at 729. However, contrary to Mother's argument, ***Richardson*** does not *mandate* a denial of attorney's fees to a party who has not prevailed on every aspect of his or her case; the inquiry is more subtle and fact specific. The mere fact that Mother prevailed on her petition to modify child support does not, *ipso facto*, foreclose Father's recovery of attorney's fees on his successful petition to modify child custody. As noted above, Mother's alcoholism precipitated Father's petition to modify custody, and Mother's subsequent refusal to consent to the parties' previous agreement delayed the resolution of the custody matter, *see discussion supra*. As such, the issue of custody comprised the majority of the litigation in this case and occurred over a sixteen-month period from October 2018 through February 2020. Conversely, the parties spent considerably less time on the litigation of Mother's petition to modify child support, i.e., the majority of the child support litigation occurred over a period of less than three months between February 2021 and April 2021. Therefore, under the facts of this case, it was not an abuse of discretion for the trial court to award Father attorney's fees on his petition to modify custody despite Mother prevailing on her petition to modify child support.

Mother also asserts that the trial court abused its discretion "by only looking at [her] fault and not considering the ability of either party to pay the awarded fees." However, in its February 24, 2020 order on Father's attorney's fees, the trial court discussed the parties' respective incomes. Thus, at the time it awarded Father's attorney's fees, it appears that the trial court not only was aware of each parties' income, but that it also considered income in reaching its decision. Regardless, Father's ability to pay—or Mother's inability to pay—his attorney's fees is not the controlling question here. *See **Taylor v. Fezell***, 158 S.W.3d 352, 360 (Tenn. 2005) (citing ***Sherrod v. Wix***, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992)). Because attorney's fee awards in child custody proceedings "are not primarily for the benefit of the custodial parent but rather to facilitate a *child's* access to the courts," ***Sherrod***, 849 S.W.2d at 784 (citing ***Graham v. Graham***, 204 S.W. 987, 989 (Tenn. 1918)) (emphasis added), when a trial court awards attorney's fees under section 36-5-103(c), it "*may* consider proof of inability to pay, but such consideration will not be controlling." ***Taylor***, 158 S.W.3d at 360 (citing ***Sherrod***, 849 S.W.2d at 785) (emphasis added). According to the record, the attorney's fees Father incurred as a result of this litigation were indeed necessary to protect the Children. For the foregoing reasons, we conclude that the trial court did not abuse its discretion when it awarded Father $36,448.00 in attorney's fees. Tenn. Code Ann. § 36-5-103(c).

## B. Appellate Attorney's Fees

Both parties seek attorney's fees incurred in this appeal. Because we have affirmed the trial court's award of Father's attorney's fees, Mother is not the prevailing party on appeal. *See* Tenn. Code Ann. § 36-5-103(c). Accordingly, her request for appellate attorney's fees is respectfully denied.

Although he failed to list it as an issue in his statement of the issues presented for review, Father asks this Court to award him attorney's fees for defending this allegedly frivolous appeal. The contents of appellate briefs are governed by Rule 27 of the Tennessee Rules of Appellate Procedure. According to the rule, the appellant's brief shall contain "[a] statement of the issues presented for review . . . ." Tenn. R. App. P. 27(a)(4). Similarly, "if *appellee* is also requesting relief from the judgment, the brief of the appellee *shall* contain the issues and arguments involved in his request for relief . . . ." Tenn. R. App. P. 27(b) (emphases added). Because "[a]n award of attorney's fees generated in pursuing [an] appeal is a form of relief," our rules require that such a request be stated as an issue on appeal. ***Killingsworth v. Ted Russell Ford, Inc.***, 205 S.W.3d 406, 411 (Tenn. 2006). Any issue not included in the statement of issues presented for review as required by Tennessee Rule of Appellate Procedure 27(b), is not properly before the Court of Appeals. ***Hawkins v. Hart***, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Father failed to designate his request for appellate attorney's fees as an issue in the statement of the issues section of his appellate brief. Father's only mention of his appellate attorney's fees comes at the end of his brief. By failing to include the issue of appellate attorney's fees in the statement of the issues section of his brief, Father has waived the issue.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order on attorney's fees. The parties' respective motions for appellate attorney's fees are denied, and the case is remanded for such further proceedings as are necessary and consistent with this Opinion. Costs of the appeal are assessed to the Appellant, Christina Ann Corey, for all of which execution may issue if necessary.

_s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE
